Argued October 21, affirmed in part; reversed and remanded in part November 25, 1974; petitions for review pending

SPOONER ET UX, *Appellants, v.*
POLK COUNTY (No. 20456), *Respondent.*

528 P2d 597

*Ralph C. Spooner,* Salem, argued the cause for appellants. With him on the briefs was Bruce W. Williams, P.C., Salem.

*Dwight L. Ferris,* Deputy District Attorney, Dallas, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

Plaintiffs, property owners in Polk County, initiated this action contending defendant, Polk County, was in breach of two contractual obligations. The county counterclaimed, contending plaintiffs were in breach of two contractual obligations. The trial court, sitting without a jury, ruled in plaintiffs' favor on one of their claims and in the county's favor on the other. The court also ruled against the county on both of its counterclaims. Plaintiffs appeal on the claim resolved against them.

In 1966 the plaintiffs and county officials executed a written lease agreement whereby the county was to have the use of 1.322 acres "more or less" of plaintiffs' property for construction and operation of a radio communications tower. The lease was for 99

years. The agreement also granted the county a 20-foot wide, 5,819-foot-long easement over plaintiffs' property to the tower site. In return the county was to pay plaintiffs $75 per year, and perform certain construction and maintenance obligations relating to a road over the easement.

This case concerns these road obligations. Approximately the first 1,900 feet of the county's easement followed plaintiffs' gravel driveway between their home and a public road. The county was to maintain this portion and, if certain conditions were fulfilled, to pave it. The balance of the easement road was to be constructed and maintained by the county as a gravel road.

Apparently there have been frequent disagreements between the parties concerning their rights and duties under this 1966 agreement. This action is the most recent. Plaintiffs contend the county is in breach of obligations: (1) to "maintain" a gravel road over the entire 5,819-foot easement; and (2) to "pave" the first 1,900-foot-long portion of it. The county contends plaintiffs have breached an implied covenant of quiet enjoyment and actually or constructively evicted the county from the leased property.

The trial court concluded that the county was in breach of its obligation to "maintain" a gravel road over the easement, but that there was no evidence of actual damages. The court thus awarded nominal damages. The court further concluded that the county had not proven facts necessary to support either of its counterclaims. There is evidence to support these findings and no appeal is taken from them.

The trial court also concluded that the county was not in breach of a duty to pave the first 1,900 feet of the easement road. Plaintiffs argue this finding is erroneous. Resolution of this claim requires interpretation and construction of the parties' agreement.

The relevant language of the agreement provides:

"* * * * *

"The TENANT [the county] shall grade and surface with crushed rock, to a minimum width of eight feet, the access road herein described and granted, and shall maintain such surfaced road for its use and for the personal use of the LESSORS [plaintiffs] and their heirs and assigns and successors in interest. The access road shall be maintained by the TENANT with a ¾ inch crushed rock surface and maintained in such a manner as to be smooth and passable at all times for the passage of passenger cars. However, in the event the LESSOR desires to use other equipment on the roadway he reserves the right to strengthen or alter the roadway to accommodate such other equipment and to insure that said alterations do not leave the road in such condition that passenger cars cannot use it.

"The portion of access road from road 741 to the barn area shall be maintained to its present width.

"In the event road 741 is improved with asphalt, concrete or other paving in the near future, the access road from road 741 to the existing gate some 200 feet from the barn shall be similarly surfaced and no further grading required. The TENANT within the period prior to September, 1970, shall in any event so pave the above described section provided the LESSORS pave the court yard immediately in front of the existing residence, including curbs, catch basins and drain lines."

■ The condition precedent to the county's duty to

pave the driveway portion of the easement road was fulfilled when plaintiffs paved "the court yard immediately in front of the existing residence." In August 1970 county officials and a paving contractor went to plaintiffs' property. A dispute arose about how wide the paving should be. Plaintiffs contended the county should pave the driveway to its full existing width. They relied on the following provision in the agreement: "The portion of the access road from road 741 to the barn area shall be maintained to its present width." There was evidence that the "present width" when the agreement was executed and the existing width in August 1970 varied between 17 and 20 feet. The county officials maintained they only had to place 8 feet of paving on the driveway. They relied on the following provision of the agreement: "The TENANT shall grade and surface with crushed rock, to a minimum width of eight feet, the access road herein described and granted * * *." In other words, the county believed its obligation was to pave an 8-foot width, while plaintiffs believed its obligation was to pave a 17- to 20-foot width.

The parties discussed settling this dispute at the time. The county officials offered to pave a 12-foot width. Plaintiffs insisted on nothing less than paving the entire existing width. County officials refused to do so. No paving of any width was placed on the driveway. This litigation followed.

■■ Ascertaining and effectuating the intention of the parties is the goal in the interpretation and construction of a written instrument. ORS 42.240;[1] *Auto-*

---

[1] "In the construction of an instrument the intention of the parties is to be pursued if possible; and when a general and

*motive Equipment v. 3 Bees Logging,* 251 Or 105, 444 P2d 1019 (1968). Intention is deduced from the language used and the surrounding circumstances. ORS 42.220;[1] *In re Holland's Estate,* 180 Or 1, 175 P2d 156 (1946).

The language used is ambiguous. There is no specific reference to the required width of the paving for the driveway. The gravel road between the area of plaintiffs' house and the radio tower was to be "a minimum width of eight feet." The gravel driveway between the public road and plaintiffs' house was to "be maintained to its present width," that is, 17 to 20 feet. Which standard—"eight feet" or "present width" —governs the county's duty to pave the driveway?

Surrounding circumstances are persuasive that the "eight feet" standard governs. The county was granted an easement that was only 20 feet wide. There was evidence in the trial court that it would be impractical, if not impossible, to place a 20-foot-wide road on a 20-foot-wide easement because this would leave no room for ditches and cuts required for sound road construction. We agree with the trial judge that the parties did not contemplate a paved road that, with ditches, etc., would be wider than the easement granted the county.

Plaintiffs' argument to the contrary is that an

particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it." ORS 42.240.

[2]

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language he is interpreting." ORS 42.220.

8-foot-wide paved surface is of no use to them, and it should follow that the parties must have intended a wider road. But plaintiffs fail to state why an 8-foot-wide road is useless. Common sense suggests such a paved surface would be wide enough for one car or pickup truck to drive on, although probably not wide enough for two vehicles to pass. But then, how often do vehicles pass on a driveway that serves a single house?

In their motion for a new trial and on oral argument in this court plaintiffs state an 8-foot-wide road is useless because it would be insufficient for the movement of farm machinery. We have searched the record and fail to find any evidence relevant to this statement. Mr. Spooner described his farm operation as modest, consisting of grazing about 100 sheep on about 200 acres. There is no evidence that such an operation necessitates moving large farm machinery; the implications are to the contrary. Moreover, we note that the agreement in question repeatedly refers only to the movement of passenger cars over the easement road.

We conclude that the parties intended that as long as the existing driveway portion of the easement road remained gravel, the county would maintain it as a gravel road 17 to 20 feet wide. If the conditions precedent to the county's duty to pave occurred, the parties intended that there would be an 8-foot-wide paved strip down the middle of the driveway with about 4½- to 6-foot-wide gravel shoulders on either side of the paving. This would enable most traffic to travel on the paved surface, and enable vehicles going in opposite directions to pass by using the shoulders. The portion of the trial court's decision interpreting the agreement is affirmed.

■ The remaining issue concerns the effect to be given to the county's timely "tender" or offer to pave the road to a width of 8 feet, which offer was increased to 12 feet, and plaintiffs' rejection of that tendered performance. The trial court's decision analyzed this matter as follows:

> "It is the rule that an offer made by one party to a contract to perform in accordance therewith, and the refusal by the other party excuses performance thereof. Therefore the offer by the defendant to the plaintiffs to pave and refusal of that offer by the plaintiffs constituted an excuse for nonperformance of that duty and no liability can result to the defendant for failure to so perform."

Plaintiffs contend this analysis is in error. They argue that if we interpret the agreement to only require paving that is 8 feet wide, as we have, then the county should at least be liable to perform that duty or respond in damages.

The rule apparently relied upon by the trial court is explained by Corbin:

> "A tender or an offer to perform is not the equivalent of actual performance and never, standing alone, operates as a discharge of the duty
> * * *.
>
> "If, however, the performance promised is one that requires the co-operation of the promisee or of some representative of the promisee, a tender or an offer of performance by the promisor at the proper time and place will make it incumbent on the promisee to render the necessary co-operation. Whether the promisee has himself promised to render the co-operation or not, the promisor's duty of performance is conditional upon the giving of the requisite co-operation. In such a case, the promisor's duty to perform may be discharged by the failure of the other to co-operate. It is not the promisor's offer of performance, however, that dis-

charges him; instead, it is the refusal of the necessary co-operation by the other party." 5A Corbin, Contracts 519-20, § 1233.

We doubt that such an analysis can fairly be applied to a case like this. Tender and refusal are almost invariably discussed in the context of offers to pay a liquidated sum of money, *Equitable Life Assur. Soc. v. Boothe,* 160 Or 679, 86 P2d 960 (1939), or deliver a specific chattel, *cf., Denny v. Alder,* 258 Or 295, 482 P2d 723 (1971), or deliver a specific document, *see, Bembridge v. Miller,* 235 Or 396, 385 P2d 172 (1963). A common denominator in all these situations is that the performance due is specific and certain. By contrast, in this case the county's duty to pave the road in question was subject to honest and reasonable dispute as to the extent of that duty because the agreement was ambiguous. If the above-quoted tender and refusal rule were applied when the extent of a duty is in dispute, it would mean that parties in the position of the plaintiffs in this case would face a grisly choice: accept less than they believe they are entitled to, or forever be barred from receiving anything. Such a result seems unreasonable.

In any event, even assuming that a tender and refusal rule would otherwise be applicable, the Oregon Supreme Court's analysis of this issue is not in accord with the trial court's and Corbin's. In *Bembridge v. Miller,* supra, a case involving tender of a liquidated sum of money, the court stated that the effect of tender and refusal

"* * * is to cut off the tenderer's, liability, *other than for the debt,* for damages and interest arising from nonpayment * * *." (Emphasis supplied.) 235 Or at 402-03.

If tender does not discharge a debt, it follows that

the county's offer to furnish paving 8 feet wide does not discharge that obligation. However, the county's liability for damages arising since the tender is "cut off." *Bembridge v. Miller,* supra. This means that the appropriate measure of damages is the amount it would have cost at the time of the tender—August of 1970—to pave the road in question on plaintiffs' property to the required width of 8 feet.

While there is some evidence in the record from which the trial court could make this computation on remand, the more appropriate procedure would be to allow the parties to present additional evidence on this question.

Affirmed in part; reversed and remanded in part.