Argued and submitted July 18, 1980; resubmitted in banc February 12, reversed and remanded with instructions, February 18, reconsideration denied April 9, petition for review denied May 5, 1981 (291 Or 1)

## COOK,
*Plaintiff,*

*v.*

## SOUTHERN PACIFIC TRANSPORTATION COMPANY,
*Respondent,*

*v.*

## CANNON,
*Appellant,*

*v.*

## BURWELL et al,
*Defendants.*

## COOK,
*Plaintiff,*

*v.*

## SOUTHERN PACIFIC TRANSPORTATION COMPANY,
*Defendant,*

*v.*

## CANNON,
*Respondent,*

*v.*

## BURWELL et al,
*Appellants.*

(No. 75-246 L, CA 13267)

623 P2d 1125

H. F. Smith, Klamath Falls, argued the cause and filed the briefs for appellant-respondent Cannon.

Stanley C. Jones, Klamath Falls, argued the cause for appellants Burwell and DeLap. With him on the brief was Giacomini, Jones & Associates, Klamath Falls.

James H. Clarke, Portland, argued the cause for respondent Southern Pacific Transportation Company. With him on the brief were Jeffrey M. Batchelor, Robert E. Maloney, Jr., and Spears, Lubersky, Campbell, & Bledsoe, Portland.

JOSEPH, C.J.

Thornton, J., specially concurring opinion.

## JOSEPH, C.J.

Plaintiff, a brakeman on defendant's railroad, brought an action for personal injuries against defendant under the Federal Employers' Liability Act, 45 USC § 51, *et seq.* Defendant filed a third party complaint for indemnity against Cannon, an individual with whom defendant had contracted for the demolition and salvage of its abandoned station at Chiloquin, Oregon. Cannon, in turn, brought a third party action for indemnity against Burwell and De-Lap, who had subcontracted with Cannon to do the actual demolition.

A jury verdict for plaintiff for $39,593.12 was entered. The trial court granted defendant's renewed motion for summary judgment and its motion for directed verdict on its third party claim against Cannon on the ground that the contractual indemnity clause in the demolition agreement covered the situation as a matter of law. A motion for summary judgment for Cannon against Burwell and DeLap on his contractual indemnity claim was also allowed. Subsequently, a judgment was entered against Cannon for the amount of plaintiff's FELA judgment, plus $19,878.44 for attorney fees and expenses of defense.

Cannon appeals, assigning as errors the granting of the summary judgment and the directed verdict and the action of the trial court in permitting defendant, after entry of a judgment, to reopen the judgment, file an amended complaint specifically requesting attorney fees and present evidence thereon. Cannon also appeals the denial of his motions for involuntary non-suit and directed verdict. Burwell and DeLap also appeal assigning error to the granting of a summary judgment in favor of Cannon.

The facts are not in dispute. Cannon agreed to remove the abandoned station house, paying $100 for the privilege, and was entitled to whatever salvage value, estimated at $1,200 to $1,500, the materials had.[1] This agreement, a form contract, was signed by Cannon's father-in-law, now deceased, on his behalf. Because he was moving to Canada, Cannon subcontracted the work to Burwell

---

[1] In form Cannon purchased the structure under a bill of sale.

and DeLap, who were to receive half the salvageable material. Burwell and DeLap worked intermittently on the job. As valuable material was removed from the building, it was taken away each day and the debris was stacked on the loading platform, which stood within six feet of the railroad track.[2] Each night, Burwell and DeLap would police the area for any hazardous conditions, and they did so on the last day they worked prior to the accident. There was evidence that someone had been stealing debris from the pile and, over the weekend just prior to the accident, had attempted to free a long plank from the stack, but had managed only to pull it out so it extended over the tracks. Plaintiff was injured when his leg was caught between the plank and the engine on which he was riding. This action followed.

Under the contract between defendant and Cannon, defendant retained title to the land on which the structure stood and the right to make necessary inspections of the work and take any measures required to ensure the safety of its operations, all at Cannon's expense. The indemnity clause provided:

> "Buyer [Cannon] hereby releases and discharges and agrees to indemnify and save harmless Railroad, its successors and assigns, from and against all liability, cost and expense arising out of or in connection with the work to be performed by Buyer, or from the presence on, in or about the premises of Railroad by Buyer or his agents, employees or contractors regardless of any negligence or alleged negligence on the part of any Railroad employee or agent."

A provision in the form contract which would have required the buyer to obtain a million dollar bond to cover potential liability under the indemnity provision was deleted.

The initial question is whether, as a matter of law, the quoted provision binds Cannon to indemnify defendant for the acts of or conditions created by unknown third persons which injured defendant's employee and for which defendant was responsible by reason of its failing to discover and prevent such acts or conditions.

---

[2] The contract provided that no materials would be placed within 10 feet of the track.

■    We are mindful of several rules relating to the construction of indemnity agreements. Indemnity provisions, when they appear in agreements having a primary purpose other than indemnity itself, are viewed as realistic attempts to allocate business risks among the parties and should be given a reasonable construction. *Elte, Inc. v. S.S. Mullen, Inc.,* 469 F2d 1127 (9th Cir 1972); *Northern P. Ry. Co. v. National Cylinder G. Div. of C.C.,* 2 Wash App 338, 467 P2d 884, 887 (1970). Like other contracts, indemnity agreements are usually to be interpreted according to the plain meaning of the language employed, where such meaning is unamibiguously expressed. *May v. Chicago Ins. Co.,* 260 Or 285, 292-93, 490 P2d 150 (1971). Where the language used is ambiguous in the context of the entire contract, it must be interpreted in light of the surrounding circumstances and the situation of the parties so as to effectuate the parties' intent. ORS 42.220;[3] *Spooner v. Polk County,* 19 Or App 557, 561-62, 528 P2d 597 (1974). If thereafter doubts remain, they are generally resolved against the party which drafted the contract. *Derenco v. Benj. Franklin Federal Savings & Loan,* 281 Or 533, 552, 577 P2d 477 (1978). Indemnity provisions are construed against holding that coverage extends to the negligence of the indemnitee, unless a contrary intention clearly appears, expressly *(see Southern Pac. Co. v. Layman,* 173 Or 275, 279, 145 P2d 295 (1944)) or out of the circumstances of the parties and their relationship. *See So. Pac. Co. v. Morrison-Knudsen Co.,* 216 Or 398, 338 P2d 665 (1959).

At trial and on appeal much of the evidence and argument went to establish the applicability of *Layman* to the agreement in this case. In *Layman,* the indemnity clause, though broad, made no specific reference to the negligence of the railroad. 173 Or at 277. Here, the contract provides that defendant's negligence will not preclude recovery, provided the facts otherwise fall within the scope of the clause. The fact that construction of the indemnity agreement may have the ultimate *effect* of indemnifying defendant for its own negligence will not bring the policy

---

[3] "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language he is interpreting."

considerations of *Layman* into play where the contract makes specific reference to the possibility of negligence by the railroad. *See So. Pac. Co. v. Morrison-Knudsen, supra,* 216 Or at 415-420.

■    It remains to be determined whether the indemnity clause here was *intended* to cover the negligent acts of third parties who are under the control of neither party. The burden of bringing the facts of a case within the ambit of an indemnity agreement falls on the party seeking indemnity. *Valley Inland Pacific Constructors v. Clackamas Water Dist.,* 43 Or App 527, 539, 603 P2d 1381 (1979).

Not surprisingly, the parties advance markedly different views of the meaning of the agreement. Defendant argues for a broad reading:  Had it not been for the demolition of the station house, there would have been no debris pile, no scavengers and no injury; the injury therefore qualifies as "arising out of or in connection with the work to be performed" because the work in effect set the stage for the third party negligence. Cannon argues that the quoted contract language refers to the *work activity* or to hazardous conditions negligently created in the course of the demolition.

■    In construing the language of an agreement to effectuate the parties' intent, the language is not examined in a vacuum. *See* ORS 42.220.

> "In the first place, no writing which is to be the basis of judicial action can be considered only in the abstract. Evidence of the surrounding circumstances must be resorted to, in order to identify the subject-matter and the persons referred to in the writing and to reveal the relations of the parties and the situation from which the transaction arose." McCormick, *Evidence* § 219 (1st Ed 1954).

The clause "arising out of or in connection with," if given the broad construction defendant claims for it, would have the effect of making Cannon a virtual insurer of defendant for any injury which occurred on the site. We cannot say as a matter of law that the parties intended such a result.

In *So. Pac. Co. v. Morrison-Knudsen, supra,* the court construed an indemnity provision which was similarly broad but which said nothing about the effect of the railroad-indemnitee's own negligence that caused the damages for which indemnity was sought. The court refused to construe the provision on its face to require that the defendant indemnify the railroad, stating that the potentially harsh results stemming from such a construction dictated examination of matters beyond the language of the agreement. 216 Or at 412. The court then looked at three factors:[4]

"*** (1) [T]he relative status of the parties, particularly, in a financial sense; (2) the relative scope of the privilege accorded [the indemnitor]; and (3) the degree of additional liability assumed by the Railroad by reason of the privilege conferred on the indemnitor." Id.

Applying those factors to the situation (an injury suffered during work at a railroad spur constructed and operated by the indemnitor, a major construction company), the court held that indemnification for the railroad's negligence was intended by the parties. 216 Or at 412-14.

---

[4] These factors derive from the court's earlier opinion in *Southern Pacific Co. v. Layman, supra,* which involved an indemnity clause in a railroad crossing agreement. The clause was broad but made no mention of the consequences of the railroad-indemnitee's negligence, which in fact caused the accident in issue. Citing the policy against construction of indemnity agreements which are part of other agreements to indemnity the indemnitee for its own negligence, the court looked at the factors stated in the text and concluded as a matter of law that the suit for specific performance of the indemnity agreement was properly dismissed below. 173 Or at 285.

Although, as indicated above, the holding of *Morrison-Knudsen* is not directly applicable to this case, a similar approach is appropriate. It seems unlikely to the extent of total improbability that Cannon, who received only a six-month license to enter upon defendant's property to remove the station house and who expected to make at most $1,500 from the deal, would have agreed to hold the railroad harmless for acts of third parties beyond Cannon's control. The cost alone of defending an action would very probably exceed that expected profit. The agreement in question here does not specifically address the question of third-party acts.[5] Furthermore, intended broad liability was inconsistent with deletion of the indemnity bond provision from the bill of sale. We note that there was no requirement that Cannon provide a watchman during the six months the contract was in effect or that any material which could conceivably foul the tracks be removed at the end of each workday.

■    We hold that the indemnity clause cannot be read to require indemnity as a matter of law for the act of an unknown third party over whom Cannon had no control. Therefore the summary judgment and directed verdict for defendant Southern Pacific are reversed.

There remains the question whether this case presents a jury question which requires remand. The evidence showed that the particular turn of events was not contemplated by the parties. In the light of the policies underlying *Layman* and *Morrison-Knudsen, supra,* which are applicable here, we hold *as a matter of law* that Cannon's motion for directed verdict should have been granted.

---

[5] The only similar case involving a broad indemnity clause and third-party negligence is *Parks v. Western Washington Fair Association,* 15 Wash App 852, 553 P2d 459 (1976). A fair patron was injured when she slipped on ice in a grandstand. The fair association, the indemnitee, tendered the defense of the suit to the snow-cone vendor (indemnitor), which was declined. The clause required indemnification for all damages that "resulted either directly or indirectly from the activities and business of the concessionaire in connection with this contract." 553 P2d at 460. Noting that "causation not negligence is the touchstone," the court held that the negligence of third parties is too attenuated to be intended to be covered by the parties, absent some evidence of control by the indemnitor over the instrumentality or conditions causing the accident. 553 P2d at 462. The court further stated that, had the parties intended liability to extend to the acts of the concessionaire's customers, the agreement should have spelled it out.

In *Layman,* although the court recognized the language of the indemnity agreement as broad and general enough to cover the situation and require Layman to reimburse the railroad, it stated:

> "Such [indemnity] contracts, it is said 'are usually intended to provide against loss or liability of one party, through the operation of the other, or caused by physical conditions that are under the control of the other — *over which the party indemnified has no control, and the party indemnifying has control.'"* 173 Or at 281. (Emphasis supplied.)

The Supreme Court applied the *Layman* "rule against harshness" in *Morrison-Knudsen Co.* to a similar indemnity clause in a contract between the railroad and a group of large corporations for the construction and operation of a loading bunker. Looking at the parties' relative financial status, the scope of the privilege accorded the industry group and the additional risk of liability, assumed by the railroad, the court held, again *as a matter of law,* that the parties intended coverage for the concurrent negligence of employees of the railroad and the industry group. 216 Or at 414.

Where the indemnity provision is an adjunct of a larger agreement, courts are required to construe the language of the provision in a manner which reasonably allocates between the parties the risks arising out of their underlying contractual relationship. *Elte, Inc. v. S. S. Mullen, Inc., supra.* The "rule against harshness" serves this purpose by requiring examination of aspects beyond the mere language of the agreement where three criteria are met: (1) the language, if construed broadly, results in liability to the indemnitor which far exceeds the expected profits from the contract; (2) liability arises from acts or conditions beyond the indemnitor's control; and (3) the agreement fails to allocate specifically the particular risk from which the liability arises. If these criteria are present, the scope of the construction to be given to the indemnity clause depends on a balancing of the *Layman* factors.

The principal difference between this case and *Layman* and *Morrison-Knudsen* is that, in those cases, indemnity was sought for the indemnitor's own negligent acts. In the instant case, we are concerned with the acts of a

third party over whom neither party had control; defendant happened to be legally liable for the injury to its employee under the FELA, which imposes upon railroads a very broad duty of care for its workers. In terms of the underpinnings of the "rule against harshness," however, the distinction is immaterial, because application of the rule does not turn strictly on whether the indemnitee was *actively* negligent.

*Layman* and *Morrison-Knudsen* make it our responsibility to construe indemnity agreements of this type. The result of application of the *Layman* factors is quite clear. Cannon is an individual with insubstantial personal means who purchased a license to enter onto railroad property over a six-month period for the purpose of removing a building with a maximum expected salvage value over demolition costs of $1,500. The risks from this contract are very similar to those the railroad would have incurred had it chosen to have its own crew demolish the building. The risk that third parties might foul the track was ever-present; the only "increase" in risk was that demolition of the building provided a ready source of materials which could maliciously or negligently be used to create a hazard. The agreement is silent with respect to third-party negligence. The absence of a specific allocation of this risk to Cannon and the harsh result of imposing liability in this case require that we construe the language to exclude coverage.

There is an additional reason for construing the contract language against the railroad. The agreement in question is a form contract prepared by defendant and is silent on the question of third-party negligence. In *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 552, 577 P2d 477 (1978), the Supreme Court said:

> "*** We infer from the evidence that loans were required to be transacted on defendant's security forms. Ambiguous contracts are usually construed against the party who drafts them. Silence on the subject of a right which the drafter later contends he has is usually fatal to his contention unless such right is one which necessarily results from the other terms of the contract. In the present situation a beneficial interest in defendant in the money does not necessarily result from the written terms of the

contract. Construction against the drafter of the contract is particularly appropriate in a situation like the present where the contract is one of adhesion with the borrowers having no opportunity to negotiate its terms. We therefore reject the arguments that the borrowers were equally responsible for the omission of any provisions concerning the use of the money and that, since the parties contracted for reserve accounts without providing for payment of interest or earnings, the agrement is conclusive of defendant's right to use the funds without reimbursement. \*\*\*"

There is no evidence that any of the terms of this contract were in fact negotiated by or for Cannon. The fact that the indemnity bond requirement was deleted does not evidence a negotiation process but merely the reality that the cost of the bond would, at least, substantially diminish the salvage value of the building. Failure to address specifically the question of third-party negligence must be construed against the railroad.

The railroad's original motion for summary judgment made prior to trial was denied. A great deal of evidence surrounding the parties' intent was then taken, most of which went to the scope of Cannon's privilege and the increased risk to the railroad from Cannon's activities (*i.e.,* the *Layman* factors). There was also evidence of the parties' respective understandings of the scope of this agreement, which, not surprisingly, accorded with their present arguments. However, Cannon's father-in-law, who negotiated the agreement for Cannon, was dead at the time of trial and the railroad, inexplicably, did not offer the testimony of the person who signed the agreement on its behalf. There was therefore no evidence of any specific discussions which might have occurred prior to contracting with respect to the intended scope of the indemnity clause. The circumstantial evidence compels the conclusion that Cannon's understanding of the indemnity agreement was the intended one, and the railroad offered no direct evidence which would tend to undercut that conclusion. We are persuaded that no reasonable juror could conclude otherwise. Cannon's motion for directed verdict, made after defendant had rested, should have been granted. *James v. Carnation Co.,* 278 Or 65, 69-70, 562 P2d 1192 (1977).

The summary judgment against Burwell and De-Lap was given as a direct, logical consequence of the judgment against Cannon. It, too, is reversed.

Reversed and remanded with instructions to enter a directed verdict for Cannon and to set aside the summary judgment against Burwell and DeLap.

### THORNTON, J., specially concurring.

I concur in the result reached by the majority opinion but disagree with the rationale. In my view, the majority confuses a rule of construction (which is applied by the judge) with the rule of substantive law, which makes the question of the parties' intent one for the jury to be determined from all the facts.

Where the language of an agreement is ambiguous or fails altogether to deal with the particular matter which forms the basis of the controversy, the intent of the parties is relevant and extrinsic evidence is admissible to establish that intent. The majority seems to hold that the application of the "rule against harshness" to the expansive language of this agreement produces such an unreasonable result that, *as a matter of law,* it cannot be construed to require indemnity and that more precise (extrinsic) evidence of intent is required. This approach would make the determination one for the jury. As applied, therefore, the rule against harshness in effect creates an ambiguity in language that is otherwise broad enough to cover the situation.

It seems to me that such an approach is at odds with that taken in *Layman* and *Morrison-Knudsen.*[1] In both of those cases, the court itself balanced the *Layman* factors, ruled as a matter of law on the parties' "intent," and *construed* the contract accordingly. In neither case is there any discussion of facts surrounding the making of the contract nor of any statements either party may have made on the subject. The "rule against harshness" does not judicially induce ambiguity in the language of an agreement. It states that, where the absence of control and profit versus damages elements discussed in the lead opinion are present, courts will not read an otherwise broadly drafted

agreement to require indemnification absent express language to the contrary in the agreement. The fact that we are dealing with third-party negligence as opposed to that of the indemnitee does not justify a different approach. *Accord: Parks v. Western Washingon Fair Association,* 15 Wash App 852, 553 P2d 459 (1976) (had parties intended snow cone concessionaire to indemnify fair association for injuries to patrons caused by negligence of concessionaire's customers, agreement should have spelled it out); *Sun Oil Co. v. Renshaw Well Service, Inc.,* 571 SW2d 64 (Tex Ct App 1978).

As I interpret the approach taken in *Layman* and *Morrison-Knudsen,* this court should construe the contracts against defendant and deny indemnity as a matter of law, rather than examining the facts and determining that no reasonable jury could find that the parties intended that Cannon was not to be bound under the facts, as the majority opinion now holds. As I read *Layman* and *Morrison-Knudsen* this is never a jury question.

------

[1] *Southern Pac. Co. v. Layman,* 173 Or 275, 145 P2d 295 (1944); *So. Pac. Co. v. Morrison-Knudsen Co.,* 216 Or 398, 338 P2d 665 (1959).