Argued and submitted April 1, 1985, affirmed on appeal and cross-appeal May 14, 1986

# ZOELLER,
*Plaintiff,*

*v.*

# BURLINGTON NORTHERN, INC. et al,
*Defendants.*

# BURLINGTON NORTHERN, INC.,
*Third-party Plaintiff,*

*and*

# BIRD & SON, INC.,
*Respondent - Cross-appellant,*

*v.*

# SHELL OIL COMPANY,
*Appellant - Cross-respondent.*

(A8108-04903; CA A33033)

719 P2d 488

William N. Mehlhaf, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Burns and Mehlhaf.

J. P. Graff, Portland, argued the cause for respondent - cross-appellant. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts.

Before Richardson, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff Zoeller, a brakeman for Burlington Northern Railroad, was injured in the early morning of September 9, 1979. He was working at moving railroad cars on property belonging to Bird & Son (Bird) in Portland when he stepped on a metal plate covering an "access point" to underground steam and fuel lines close to the railroad tracks. The plate gave way, and he fell into the access point hole. He brought an action for damages for personal injuries against Burlington and Bird. Burlington filed a third-party complaint for indemnity against Shell Oil Company, and Bird filed a third-party complaint seeking common law indemnity and contribution from Shell. Shell then brought a counterclaim for contractual indemnity against Bird.

Zoeller settled with Burlington and Bird for $120,000. Of that amount, Bird contributed $90,000. After the settlement, the third-party actions were tried to a jury, which entered a verdict for Burlington on its indemnity claim against Shell. Judgment was entered for Burlington on that verdict.[1] The jury found that Bird was not entitled to indemnification but was entitled to contribution from Shell. It found Bird 55 percent negligent and Shell 45 percent negligent. Judgment was entered for Bird on that verdict. Shell's counterclaim for contractual indemnity against Bird was then tried to the court, which concluded that Shell was not entitled to indemnity and entered judgment accordingly.[2]

In its appeal, Shell argues that the trial court erred in denying its counterclaim for indemnity from Bird. Shell's claim is based on a 1947 contract between Shell and one of Bird's predecessors in interest.[3] In 1947, Bird was being served by a railroad "Spur #5," which was on Shell's property adjacent to property owned by Bird. Bird wanted to run a new spur next to Spur #5, and Shell agreed to sell a strip of land to Bird for that purpose. In the purchase agreement Bird gave

---

[1] Shell did not appeal the judgment in favor of Burlington. Neither Zoeller nor Burlington is a party to this appeal.

[2] A final judgment incorporating those judgments and resolving all claims was subsequently entered. The appeal is from the final judgment.

[3] There have been three prior owners of Bird's premises. Bird has succeeded to the interests and obligations of its predecessors, and for clarity we refer only to Bird as the owner of that property.

Shell an option to repurchase the land, and Shell gave Bird the right to continued use of the existing Spur #5. The agreement provides for indemnity but does not expressly refer to indemnity for Shell's negligent acts:

> "Providing [Bird] shall secure at its expense all necessary right of way, franchises and permits for the construction and maintenance of said spur track and its appurtenances and for the operation of locomotives, motors, trains, and cars thereon and thereover, and for connecting said track with and using Shell's spur track, Shell hereby grants to [Bird] the right and privilege of using Shell's said spur track in connection with its said business and for the shipment or delivery of freight, subject, however, to the following:

> "* * * * *

> "2. [Bird] shall indemnify and hold Shell harmless from and against any and all liability for loss of or damage to property of whatsoever kind or for injury to or death of any person or persons arising out of or in any way connected with the operation or use by [Bird] or removal of said track and/or Shell's spur track".

The access point into which Zoeller fell is within the walkway beside Spur #5 and the new spur constructed after the 1947 agreement. The access point is where two pipelines which run from Shell's property to Bird's go from above ground to below ground to run under Front Street. Shell supplied Bird with fuel oil through one of these lines. Bird supplied steam to Shell through the other line.[4] In 1959 Shell and Bird entered into a "mutual assistance agreement" as to the steam line. It provides in part:

> "(a) *License* We [Bird] hereby license you [Shell] to maintain and operate, during the continuance of this agreement only, that portion of the existing steam pipe line located on our real property at 6350 N.W. Front Street, Portland, Oregon. Said license and rights are limited to a strip five (5) feet wide, the center line of which is the existing steam pipeline.

> "(b) *Maintenance* You [Shell] and your agents and employees shall at all reasonable times have the privilege of entering upon said real property over such reasonable route as we may designate for the purpose of maintaining, operating,

---

[4] Ordinances of the City of Portland granted Bird the right to construct the oil pipeline and Shell the right to construct the steam line.

repairing and removing said steam pipeline and you agree to keep the portions of said property described in subsection (a) above in a neat and clean condition.

"* * * * *

"(e)  *Manner of Operation* You [Shell] agree to maintain, operate, repair and remove said steam pipe line in such a manner and at such times as will not unreasonably interfere with our operations and you will indemnify and hold us harmless from any and all claims, demands, loss, liability and damage arising directly or indirectly out of your removal of said steam pipe line."

The issue is whether the broad language of the indemnity provision in the 1947 agreement requires Bird to indemnify Shell for damages resulting from Shell's negligence, concurrent with negligence of Bird, in failing to maintain the access point to the steam line as provided in the 1959 mutual assistance agreement.[5]

Indemnity clauses are not construed to include indemnity for negligence of the indemnitee unless that intention is clearly expressed, *see Southern Pac. Co. v. Layman,* 173 Or 275, 145 P2d 295 (1944), or arises from the circumstances of the parties and their relationship. *See So. Pac. Co. v. Morrison-Knudsen Co.,* 216 Or 398, 338 P2d 665 (1959); *Cook v. Southern Pac. Transp. Co.,* 50 Or App 547, 551, 623 P2d 1125 (1981). When, as here, the indemnity provision is part of a larger agreement,

"courts are required to construe the language of the provision in a manner which reasonably allocates between the parties the risks arising out of their underlying contractual relationship. * * * The 'rule against harshness' [which is applied to avoid harsh results of finding that an indemnity provision

---

[5] Plaintiff's first assignment of error is that the circuit court erred in denying Shell's counterclaim against Bird for indemnity, and its second assignment is that the court erred in permitting entry of a judgment in Bird's favor and against Shell on Bird's claim for contribution. Bird argues that the appeal must be dismissed, because Shell's first assignment of error is not as specific as required by ORAP 7.19(2) and because Shell's second assignment is not preserved, in that it did not move for judgment n.o.v. after trial. We agree that an error must be pointed out verbatim "if it relates to a specific ruling of the court." Here, however, both assignments relate to whether Shell is entitled as a matter of law to contractual indemnity from Bird. If Shell is entitled, it is a complete defense to Bird's claims for indemnity and contribution. The denial of the defense is not a "specific ruling" within the meaning of ORAP 7.19. Our answer to Shell's first assignment necessarily decides the second, and so we do not address the latter separately.

covers negligence] serves this purpose by requiring examination of aspects beyond the mere language of the agreement where three criteria are met: (1) the language, if construed broadly, results in liability to the indemnitor which far exceeds the expected profits from the contract; (2) liability arises from acts or conditions beyond the indemnitor's control; and (3) the agreement fails to allocate specifically the particular risk from which the liability arises. If these criteria are present, the scope of the construction to be given to the indemnity depends on a balancing of the *Layman* factors." *Cook v. Southern Pac. Transp. Co., supra,* 50 Or App at 555. (Citation omitted.)

In *Layman* the plaintiff railroad sued the defendant, a farmer, to enforce an indemnity provision to pay for damages caused by the railroad's negligence. In refusing to enforce the indemnity provision, the court stressed the need to avoid harsh results and balanced several factors in order to determine whether the indemnity clause should be applied. These factors were noted in *So. Pac. Co. v. Morrison-Knudsen Co., supra,* 216 Or at 412:

"(1) The relative status of the parties, particularly, in a financial sense; (2) the relative scope of the privilege accorded [the indemnitor]; and (3) the degree of additional liability assumed by the Railroad by reason of the privilege conferred on the indemnitor."

In *Morrison-Knudsen* the court enforced an indemnity provision in favor of the plaintiff railroad against the defendant construction company for damages which had resulted because of the joint negligence of the parties. The court found that the parties had contracted to cover the negligence, noting that the harsh results which warranted the limitations applied in the *Layman* case did not exist in the one before the court.

Both parties argue at length about whether, under *Cook,* the court must look beyond the language of the 1947 indemnity agreement and whether the evidence shows that the balancing test of *Layman* has, or has not, been met. However, we do not agree that a rigid application of the *Cook* criteria or the balancing factors discussed in *Layman* and *Morrison-Knudsen* is appropriate to the facts of this case. Here, unlike in the earlier cases, there are two agreements between the parties, and the 1959 maintenance agreement defines the intention of the parties as to whether they

intended for Bird to indemnify the negligence of Shell in the broad provision of the 1947 agreement.

After trial to the court, the court made the following oral rulings:

"[A]s a matter of law * * * the obligations of Shell relative to the point where the accident occurred arose by virtue of an agreement entered into between Bird and Shell in 1959. Shell maintains it's entitled to indemnity against Bird by virtue of an agreement contained in a contract involving the sale of a small parcel of land which was used for the Bird right-of-way in 1948. There was such an agreement, and it does have an indemnity clause.

"I am ruling, however, that Shell's obligation to maintain the pit to the access point imposes liability on them irrespective of the indemnity agreement."

The written findings were:

"With respect to the liabilities of Bird and Shell arising out of the hole into which Mr. Zoeller fell, the 1959 'mutual assistance arrangement' supersedes the indemnity provisions of the 1947 Agreement and Option."

■ The 1959 maintenance agreement does not directly address the same subject and does not expressly modify the 1947 agreement and, therefore, does not "supersede" the indemnity provision in the 1947 agreement. Bird concedes that. *See Sears Roebuck & Co. v. Montgomery Elevator Co.,* 63 Or App 769, 665 P2d 1265 (1983). However, the 1959 maintenance agreement does support the trial court's conclusion that the 1947 agreement does not provide indemnity for Shell for its negligent failure to fulfill responsibilities that it had contracted to perform. To construe the 1947 indemnity provision otherwise would ignore the general purpose of indemnity agreements:

"Such contracts, it is said, 'are usually intended to provide against loss or liability of one party, through the operation of the other, or caused by physical conditions that are under the control of the other—*over which the party indemnified has no control, and the party indemnifying has control.*' " *Southern Pac. Co. v. Layman, supra,* 173 Or at 281. (Citations omitted; emphasis supplied.)

The 1959 agreement grants Shell a five-foot-wide strip of property for its steam pipeline. Shell accepted the obligation

to maintain, operate, repair and remove the pipeline. The access point is within that strip. The access point is part of the pipeline system and under the contracted-for control of Shell.

■ ■ Shell argues that, under *So. Pac. Co. v. Morrison-Knudsen, supra,* a court will not adopt the construction of an indemnity provision which would render the provision a meaningless or a useless gesture unless to do so would create such harsh results that it can clearly be said that the parties intended not to indemnify for negligence. However, a harsh result is not the only reason for refusing to construe an indemnity provision broadly. To require indemnity in this case would produce, not just a harsh, but an absurd result and would make the provision in the 1959 maintenance agreement, not the 1947 indemnity provision, meaningless. There is no evidence that the parties intended that indemnity would extend to cover one party's negligent failure to perform a responsibility which that party voluntarily assumed in a later agreement. There is no basis for concluding that, without specifically expressing their intention to do so, the parties intended to nullify a basic principle of indemnity agreements that the party in control of conditions that cause a loss indemnify the party without control.

■ On cross-appeal, Bird has raised four assignments of error, all of which raise the issue of whether there was sufficient evidence of negligence on the part of Bird to submit the questions of common law indemnity and contribution to the jury. There was sufficient evidence to present a jury question.

Affirmed on appeal and on cross-appeal.