Argued and submitted July 15, 2009, reversed and remanded July 28, respondent's petition for reconsideration filed August 5 and third-party plantiff-appellant PacificCorp's response to petition for reconsideration filed August 17 allowed by opinion September 8, 2010
See 237 Or App 228, 239 P3d 503 (2010)

STATE OF OREGON,
acting by and through the
Department of Forestry,
*Plaintiff,*

*v.*

PACIFICORP,
an Oregon corporation,
dba PacifiCorp Power,
*Defendant.*

PACIFICORP,
an Oregon corporation,
dba PacifiCorp Power,
*Third Party Plaintiff-Appellant,*

*v.*

CENTRAL OREGON LOGGING,
an Oregon corporation,
*Third Party Defendant-Respondent,*

*and*

AMERICAN STATES INSURANCE COMPANY,
a Washington corporation;
and BP Reforestation,
an Oregon corporation,
*Third Party Defendants.*

Jackson County Circuit Court
042975L3; A137295

237 P3d 861

Scott J. Kaplan argued the cause for appellant. With him on the briefs were Louis A. Ferreira and Stoel Rives LLP.

William G. Wheatley argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Third-party plaintiff PacifiCorp appeals from a limited judgment dismissing its breach of contract claim against Central Oregon Logging (COL). PacifiCorp alleged that it was entitled to indemnification from COL and assigns error to the trial court's grant of COL's motion for summary judgment and to the court's denial of PacifiCorp's cross-motion for summary judgment. The trial court determined that the indemnification agreement was unenforceable as a matter of law. We conclude that the trial court erred in its legal analysis as to the general enforceability of the parties' indemnification agreement and that there are disputes of material fact as to the agreement's application. Consequently, we reverse and remand for the trier of fact to determine whether PacifiCorp is entitled to indemnification in light of the facts presented in this case.

This appeal arises out of litigation pertaining to indemnification for property damage and fire suppression costs from a 2002 large-scale fire in Jackson County. That fire, commonly known as the East Antelope Fire, originated on privately owned forestland, allegedly when electricity from a high-voltage transmission line owned by PacifiCorp arced to a nearby madrone tree. The transmission line was located within a right-of-way easement granted to PacifiCorp.

The Oregon Department of Forestry (the DOF) filed a complaint against PacifiCorp to recover costs associated with suppression of the fire. The DOF alleged that the madrone tree had grown to within four feet of the power line and that, in failing to remove the tree, PacifiCorp violated its own vegetation management standards, which require the removal of all trees within 50 feet of a high-voltage transmission line. PacifiCorp paid the DOF $3.2 million to settle the DOF's claims. PacifiCorp also paid approximately $585,000 to certain private parties who allegedly were damaged by the fire. PacifiCorp filed a third-party breach of contract claim against COL seeking to recover those amounts, plus its attorney fees and costs.[1]

---

[1] PacifiCorp also brought third-party claims against BP Reforestation. PacifiCorp alleged in its third-party complaint that BP Reforestation was liable for

The basis of PacifiCorp's third-party claim, which is the subject of this appeal, is a Contract for Right-of-Way Logging (the contract), which PacifiCorp and COL executed in 1995, seven years before the fire. Under the contract, COL agreed to "perform right-of-way logging services for [PacifiCorp's] distribution and transmission facilities, when and as directed by [PacifiCorp] * * *." Of central importance here, under Article 13 of the contract, COL agreed to "indemnify, defend, and hold harmless" PacifiCorp

> "against and from any and all claims, demands, suits, losses, costs and damages of every kind and description, including attorneys' fees and/or litigation expenses * * * resulting from, arising out of, or in any way connected with any act, omission, fault or negligence of [COL] in the performance or nonperformance of [COL's] obligations under this Contract or in any way related to this Contract."

COL's indemnification obligation was not, however, unlimited. Rather, Article 13 explicitly provided that

> "[COL's] indemnity obligation under this Article shall not extend to any liability caused by the sole negligence of any of the Indemnitees."[2]

In Article 14 of the contract, COL also agreed to obtain, at PacifiCorp's expense, a $5 million general liability insurance policy to cover any loss arising out of COL's operations under the contract. The contract expressly requires that the policy cover fire-fighting losses and obligates COL to maintain the insurance coverage for at least five years after completion of its work. Consistent with those contractual requirements, COL obtained a liability policy from American States Insurance Company.

In its third-party claim, PacifiCorp alleged that COL was obligated under the contract to indemnify PacifiCorp for all of its expenses associated with the fire, including the payments to the DOF and private parties, because

---

at least a portion of the damage caused by the fire because BP Reforestation's fire-fighting crews arrived late and/or negligently performed their duties. Those claims, which were dismissed by stipulation of the parties, are not relevant to this appeal.

[2] Under Article 13, the "indemnitees" included not only PacifiCorp, but also its directors, board members, members of the boards of constituent entities, officers, employees, and agents.

"[t]he East Antelope Fire resulted from COL's actions, including but not limited to its negligent failure to trim or remove the madrone tree * * * in January 1998."

COL answered, alleging that the fire resulted from PacifiCorp's sole negligence in, *inter alia*, failing to identify and remove hazardous vegetation, including the madrone tree. COL alleged that it had no duty to indemnify PacifiCorp because the fire did not result from any act or omission of COL.

After preliminary procedural sparring, COL eventually filed two separate summary judgment motions.[3] In its first motion, COL argued that it was entitled to summary judgment on PacifiCorp's breach of contract claim because the indemnification clause was unenforceable. In its second motion, COL argued that, even if the indemnification clause was otherwise enforceable, it was entitled to summary judgment because the fire resulted from PacifiCorp's sole negligence. PacifiCorp filed a cross-motion, arguing that it was entitled to summary judgment because (a) the indemnification provision of Article 13 was enforceable and (b) the fire was not caused by PacifiCorp's sole negligence.

The trial court entered an order that granted COL's first motion, denied COL's second motion, and denied PacifiCorp's cross-motion. The court concluded that the indemnification clause was unenforceable under the analysis of *Southern Pac. Co. v. Layman*, 173 Or 275, 145 P2d 295 (1944), and *Cook v. Southern Pac. Transp. Co.*, 50 Or App 547, 623 P2d 1125, *rev den*, 291 Or 1 (1981), as distilled in *Blanchfill v. Better Builds, Inc.*, 160 Or App 527, 534, 982 P2d 53, *rev den*, 329 Or 447 (1999). As we amplify and address below, the court reasoned that the indemnification provision of Article 13 was sufficiently broad as to require resort to various circumstantial considerations identified in

---

[3] Earlier in the trial court proceedings, COL sought summary judgment against PacifiCorp's breach of contract claim, arguing that the indemnification provision of Article 13 was void under ORS 30.140. *See* ORS 30.140(1) (subject to specified exceptions, indemnity provision in a "construction agreement" pertaining to "damage arising out of death or bodily injury * * * or damage to property caused in whole or in part by the negligence of the indemnitee is void"). The trial court denied summary judgment, concluding that the parties' contract is not a "construction agreement" as particularly defined in ORS 30.140(3).

*Blanchfill,* 160 Or App at 540, to determine the scope and enforceability of the indemnity obligation. After assessing those considerations, the trial court concluded:

> "Application of the 'contextual factors' to the facts of this case does not favor indemnity. Interpreting the indemnity provision 'in light of the surrounding circumstances and the situation of the parties' (*Cook* at 552), leads this court to conclude that COL would not have assumed liability for a large-scale wildfire that occurred four and a half years after the work was performed and for work that PacifiCorp had continuing and substantial control over. The court finds the language of Article 13 to have the effect of making COL the effective insurer of PacifiCorp for any liability that might arise out of the project that could in any way relate to the performance or non-performance of COL's obligations. This court concludes here, as the *Cook* court did, that it cannot be said as a matter of law that the parties intended this result. The indemnification clause of the contract does not obligate COL to indemnify PacifiCorp for PacifiCorp's own negligence."

On appeal, PacifiCorp assigns error to the trial court's allowance of COL's first motion for summary judgment and to the denial of its own cross-motion for summary judgment. In *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002), we described the applicable standard of review:

> "In an appeal from a judgment that results from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, then both are subject to review. Each party that moves for summary judgment has the burden of demonstrating that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. We review the record for each motion in the light most favorable to the party opposing it."

(Citations omitted.) *See also Employers-Shopmens Local 516 v. Travelers,* 235 Or App 573, 581, 235 P3d 689 (2010).

■ For the reasons explained below, we conclude that the trial court erred in determining that the indemnification provision of Article 13 is unenforceable as a matter of law. Consequently, the court erred in granting COL's first motion

for summary judgment. Nevertheless, PacifiCorp was not entitled to prevail on its cross-motion for summary judgment, because there are unresolved issues of material fact pertaining to the application of the Article 13 indemnification provision in this case—and, particularly, whether the predicate liability arose from PacifiCorp's "sole negligence." Accordingly, we remand for the trier of fact to determine whether the indemnification clause ultimately applies in light of the facts of this case.

■■    Our review is informed and circumscribed by several salient principles derived from a progression of Oregon appellate decisions. First, and most generally:

> "Indemnity provisions, when they appear in agreements having a primary purpose other than indemnity itself, are viewed as realistic attempts to allocate business risks among the parties and should be given a reasonable construction. Like other contracts, indemnity agreements are usually to be interpreted according to the plain meaning of the language employed, where such meaning is unambiguously expressed."

*Cook*, 50 Or App at 551 (citations omitted).

■    Second, contractual indemnity provisions generally "will be enforced if they are not detrimental to the indemnitor to an extent that the parties could not reasonably have intended." *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or App 560, 578, 188 P3d 332, *rev den*, 345 Or 317, 345 Or 417 (2008).

■    Third, and of particular pertinence here, an indemnity provision "will not be construed to cover losses to the indemnitee caused by [the indemnitee's] own negligence unless such intention is expressed in clear and unequivocal terms." *Layman*, 173 Or at 279. Nevertheless, where such intent is manifest, a court will enforce the parties' agreement to allocate risks as the parties have agreed:

> "If contractual language clearly and explicitly provides that a party will be indemnified for a particular loss, even if caused by that party's negligence, the inquiry ends, and the provision is enforced. *See, e.g., Layman*, 173 Or at 279-80; *Cook*, 50 Or App at 551-52. *See also Estey v. MacKenzie Engineering Inc.*, 324 Or 372, 376-79, 927 P2d 86 (1996)

(construing contractual limitation of liability provision); *Steele v. Mt. Hood Meadows Oregon, Ltd.*, 159 Or App 272, 974 P2d 794 (1999) (same)."

*Blanchfill*, 160 Or App at 534.

Fourth, if—but only if—a contractual indemnity provision is indefinite, its scope and enforceability will be determined by reference to a variety of extrinsic considerations. As we explained in *Blanchfill*:

"If, however, the contractual language is broad but indefinite—*e.g.*, referring to 'any and all claims' or 'any and all liability' without reference to particular risks or to the putative indemnitee's own conduct—the court determines the scope and enforceability of that language after assessing certain broader contextual considerations[.]"

*Id.* Those circumstantial considerations—which, again, are pertinent *only* if the contractual language is "broad but indefinite"—include, at least, the following factors:

"• The parties' relative status, including their financial strength, their sophistication and appreciation of potential risks, and the dynamics of their bargaining, particularly whether the indemnification language was specifically negotiated.

"• The extent to which the putative indemnitor's activities exposed the putative indemnitee to new or different liability, both generally and with respect to the particular risk—and, conversely, the extent to which the particular liability arose from circumstances, including the indemnitee's conduct, that were beyond the indemnitor's control.

"• The putative indemnitor's reasonably anticipated benefit ('privilege' or 'profit') under the agreement versus its concomitant potential exposure to liability for the indemnitee's conduct."

*Id.* at 540.

Here, the trial court proceeded from the premise that the indemnification provision of Article 13 requires COL to "hold PacifiCorp harmless from any and all claims and damages of any kind brought or made against PacifiCorp."

Consistently with that understanding, the court character-
ized the operative language as "broad and unqualified" and,
consequently, determined that it was necessary to assess the
various extrinsic factors identified in *Blanchfill*. After ana-
lyzing those factors, the court concluded that "[a]pplication of
the 'contextual factors' to the facts of this case does not favor
indemnity."

The text of an indemnity clause, like that of any other
contractual provisions, must be examined in the context of
the document as a whole. *Blanchfill*, 160 Or App at 535;
*Sears, Roebuck & Co. v. Montgomery Elevator Co.*, 63 Or App
769, 772, 665 P2d 1265, *rev den*, 295 Or 730 (1983); *Cook*, 50
Or App at 551. Here, PacifiCorp argues that the indemnifi-
cation language of Article 13, when viewed in the context of
the entire contract, unambiguously obligates COL to indem-
nify PacifiCorp unless PacifiCorp is solely negligent—and,
thus, that the trial court erred in considering the circumstan-
tial factors identified in *Blanchfill, et al.*, and in deeming
Article 13 to be unenforceable as a matter of law based on
that assessment. We agree.[4]

Three features of contractual context demonstrate
the parties' mutual understanding that the indemnification
provision of Article 13 was intended to address precisely the
sort of loss that occurred here unless that loss was caused by
PacifiCorp's sole negligence.

First, as noted, under Article 14, COL was required
to obtain and maintain liability insurance for the precise risk
that actually occurred, *viz.*, the risk of loss attributable to
fire. "A provision in an indemnity agreement that requires
the indemnitor to carry liability insurance is evidence of the
intent of the parties as to the scope of the indemnity obliga-
tion." *Sears, Roebuck & Co.*, 63 Or App at 772 (citing
*Waggoner v. Oregon Auto. Ins. Co.*, 270 Or 93, 97-98, 526 P2d
578 (1974)). The fact that the contract required COL to main-
tain such coverage for a substantial period of time following
cessation of its vegetation-clearing work under the contract
corroborates that enforcement of the indemnity clause to the

---

[4] Given that conclusion, we do not address the substance of the trial court's
treatment of individual *Blanchfill* circumstantial factors.

facts presented is consistent with the parties' understanding and intent. In other words, COL understood that it was undertaking an obligation to indemnify PacifiCorp for "downstream" losses, and not just those that occurred contemporaneously to COL's performance of its contractual obligation. That requirement to maintain liability insurance coverage distinguishes this contract from others in which indemnification clauses have been held unenforceable. *See, e.g., Layman*, 173 Or 275; *Cook*, 50 Or App 547; *accord Midland Ins. Co. v. Delta Lines, Inc.*, 530 F Supp 190, 193 (DCSC 1982) (requirement that indemnitor procure insurance is evidence that indemnity agreement constitutes a "conscious risk-shifting device").

■ Second, under the case law, an indemnification clause will be deemed "broad but indefinite," and thus ambiguous, when the language of the contract does not reference the putative indemnitee's own negligent conduct. *Blanchfill*, 160 Or App at 534; *see also Cook*, 50 Or App at 551-52 (noting that contract at issue makes specific reference to possibility of indemnitee's negligence). Here, in contrast, the language of Article 13 explicitly addresses the circumstance under which the indemnitee's (PacifiCorp's) own negligence will release the indemnitor (COL) from its obligation under that clause. The contract states that COL's "indemnity obligation * * * shall not extend to any liability caused by the sole negligence of" PacifiCorp. The necessary implication of that provision is that COL is responsible for any liability resulting from something other than PacifiCorp's sole negligence. Thus, the scope of the indemnity obligation is anything but "indefinite": Article 13 requires that COL indemnify PacifiCorp even in circumstances in which PacifiCorp has been overwhelmingly negligent, so long as the loss was not "caused by [PacifiCorp's] *sole* negligence." (Emphasis added.)

Third, and finally, the totality of the contract manifests the parties' understanding that at least one of the purposes of COL's work was to mitigate exactly the kind of risk (the risk of fire resulting from electricity arcing from a transmission line to vegetation) that ultimately resulted in the losses at issue here. That is patent not only from Article 14's liability insurance requirement, with specific reference to fire-related liability, but also from, *inter alia*, the contractual

"description of work." *See* Article 1 ("This Contract includes tree removal directly adjacent to power lines, which requires qualified line clearance tree workers to perform the work.").

In sum, when viewed in pertinent contractual context, the indemnification language of Article 13 is not indefinite either with respect to intended coverage of the type of loss at issue here or with respect to its exclusion from indemnification of liabilities caused by the indemnitee's (PacifiCorp's) sole negligence. Accordingly, the trial court erred in considering various circumstantial factors identified in *Blanchfill* and in concluding, based on that consideration, that the indemnification provision of Article 13 was unenforceable as a matter of law. The court thus erred in granting COL's first motion for summary judgment.[5]

We turn to the second assignment of error, which challenges the trial court's denial of PacifiCorp's cross-motion for summary judgment. PacifiCorp contends that the court erred because no objectively reasonable trier of fact could find that the fire resulted from PacifiCorp's "sole negligence"—and, thus, the only exception to COL's indemnity obligation is inapposite. We reject that contention summarily: Based on our review of the record, we conclude that there

---

[5] COL contends, ostensibly as an alternative basis for affirmance, that, even if we conclude (as we have) that the trial court erred in holding that the indemnification provision of Article 13 is unenforceable as a matter of law, we should nevertheless hold that PacifiCorp cannot recover indemnity because the summary judgment record demonstrates, as a matter of undisputed material fact, that the fire was, in fact, caused by PacifiCorp's sole negligence. That contention is miscast as an alternative basis for affirmance—and, properly characterized, is unreviewable.

As noted, 236 Or App at 331, COL filed two separate motions for summary judgment that are at issue. In its first motion (which was the object of PacifiCorp's first assignment of error), COL argued that it was entitled to summary judgment because the indemnity clause was unenforceable as a matter of law. In its second motion, COL argued that, even if the indemnity provision was abstractly enforceable, it was still entitled to summary judgment because the fire resulted from PacifiCorp's sole negligence. The trial court entered an order granting COL's first motion and denying its second motion. COL does not cross-assign error to the trial court's denial of its second motion for summary judgment. Under ORAP 5.57, COL was required to cross-assign error to the trial court's denial of its second motion for summary judgment to raise that ruling as error on appeal. *See Dew v. City of Scappoose*, 208 Or App 121, 144, 145 P3d 198 (2006), *rev den*, 342 Or 416 (2007).

In all events, as a practical matter, COL's contention is the obverse of PacifiCorp's contention in support of its second assignment of error, which we address and reject below, and fails for the same reason.

are disputed issues of material fact as to whether the fire was caused by PacifiCorp's sole negligence. A description of the particulars would be of no benefit to the bench, the bar, or the public.

Reversed and remanded.