[No. 1643-2.   Division Two.   July 21, 1976.]

HAROLD E. PARKS, ET AL, *Plaintiffs*, v. WESTERN WASHINGTON FAIR ASSOCIATION, *Respondent*, LOUIS LAMKEN, ET AL, *Appellants*.

*Dwayne A. Richards*, for appellants.

*Bradford M. Gierke, Gregory B. Curwen*, and *Johnson, Metzler & Gierke*, for respondent.

REED, J.—The Lamkens appeal an order requiring them to indemnify Western Washington Fair Association for attorney's fees pursuant to an indemnity contract. Mr. and Mrs. Harold Parks, not parties to this appeal, sued the Fair Association to recover for injuries sustained when they slipped and fell upon leaving the grandstand at the Western Washington Fair in 1972. The Parks' complaint alleged:

### III

That on or about the 23rd day of September, 1972, the plaintiff, OLIVE E. PARKS, while patronizing the defendant's fair, slipped and fell on the premises due to the negligent conduct of the defendant.

### IV

That the sole and proximate cause of the injury was the negligence of the defendant in maintaining the fair grounds.

Preliminary investigation by the Fair Association revealed that the Parks slipped in an aisle of the grandstand on what appeared to be ice on the steps. Believing the ice was from a "snow cone," the Fair Association tendered defense of the lawsuit to the Lamkens, exclusive "snow cone" concessionaires at the Fair, pursuant to the following provision of their concession contract.

In consideration of the privileges granted by this contract, the concessionaire agrees to protect and indemnify and hold harmless the association from any and all claims for damages, demands or suits, arising from injuries or damage sustained or alleged to be sustained by employees of the concessionaire or by any member of the public where such injuries or damage shall have resulted either directly or indirectly from the activities and business of the concessionaire in connection with this contract.

Recognizing the broad language of the indemnification provision quoted above, the Lamkens informed the Fair Association they would accept the tender of defense, but at the same time reserved the right to contest liability to pay any judgment if the facts at trial revealed that the Parks did not slip on a "snow cone." The Fair Association deemed this arrangement unacceptable and informed the Lamkens

that it would be necessary for the Fair Association to participate in the defense of the Parks' suit and pursue a third-party claim against the Lamkens for indemnification. The case proceeded to trial with attorneys for both the Lamkens and the Fair Association participating. The jury returned a verdict for the defendant and the court dismissed the plaintiffs' suit. The Fair Association then made an oral motion to recover its attorney's fees from the Lamkens pursuant to the indemnity agreement. The court granted the motion and the Lamkens appeal. For the reasons stated herein we reverse the trial court's order.

The Fair Association contends the Lamkens' acceptance of the tender of defense with a reservation of rights constituted a breach of their duty to defend under the indemnification provisions of the concession contract. They assert the Lamkens' reservation of rights gave rise to a conflict of interest between indemnitor and indemnitee necessitating active participation by the indemnitee to protect its right to indemnification. The Lamkens argue, on the other hand, that they did accept the tender of defense and took no action contrary to the indemnity contract. They further assert that the participation of the Fair Association's attorney was purely voluntary and gratuitous and was not necessitated by the reservation of rights.

■ We are unable from the record before us to resolve the parties' dispute concerning who actually defended the Parks' lawsuit. It is apparent from the record that appearances were entered by attorneys for both the Fair Association as defendant and third-party plaintiff and by the Lamkens as third-party defendants. The record presented by the parties tends to support the Fair Association's contention that it actively defended the Parks' lawsuit, having conducted the majority of cross-examination of plaintiffs' witnesses. The cross-examination conducted by the Lamkens' attorney appears to have been limited to an attempt to establish that the Parks' injuries were not caused by a slip on ice from a "snow cone," *i.e.*, a defense of the third-party action for indemnity. However, we do not deem it neces-

sary to resolve this issue. The trial court's order awarding attorney's fees was necessarily based on a conclusion that the Lamkens breached their duty to defend under the terms of the indemnity provision of the concession contract. An indemnitor's duty to defend a lawsuit against its indemnitee is totally independent from the obligation to indemnify in the event judgment is rendered. *Karnatz v. Murphy Pac. Corp.*, 8 Wn. App. 76, 80, 503 P.2d 1145 (1972). Accordingly, resolution of the issue whether the Lamkens had a duty to defend in the first instance will be dispositive of this appeal. Only if the indemnitor can be said to have breached that duty can it be held liable for the indemnitee's costs of defending the lawsuit.

The law is clear in cases involving insurance policies that an insurer's duty to defend arises when a complaint is filed against its insured alleging facts which, if proved, would render the insurer liable under its policy. *National Steel Constr. Co. v. National Union Fire Ins. Co.*, 14 Wn. App. 573, 543 P.2d 642 (1975); *Holland America Ins. Co. v. National Indem. Co.*, 75 Wn.2d 909, 454 P.2d 383 (1969). This court has expressed dissatisfaction with the strictness of this rule in light of the advent of notice pleadings, suggesting that an insurer's duty to defend arises and is determined by the facts known by the insurer at the time of tender. *National Steel Constr. Co. v. National Union Fire Ins. Co., supra* at 575. This expanded rule had earlier been applied in a case involving common-law indemnity, *Dixon v. Fiat-Roosevelt Motors, Inc.*, 8 Wn. App. 689, 509 P.2d 86 (1973), where the court stated at pages 693-94:

> Before the common-law vouching-in device can be used to bind a nonappearing party in an instance such as presently before us, *the facts at the time of the tender of defense must demonstrate that liability would eventually fall upon the indemnitor, thereby placing it under a duty to defend.* Glick v. White Motor Co., 458 F.2d 1287, 1292 (3d Cir. 1972); *Humble Oil & Ref. Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727 (3d Cir. 1971).

(Italics ours.) Though we favor application of the more expansive test to both insurers and indemnitors, we do not

deem it necessary to choose one test over the other in the case at bench. Under either test we deem the facts insufficient to impose a duty to defend upon the Lamkens.

The facts alleged by the Parks on the face of their complaint against the Fair Association are patently insufficient to impose a duty to defend upon the Lamkens under the indemnity provision of the concession agreement. The Parks merely alleged that the negligent failure of the Fair Association to maintain the grandstands was the sole and proximate cause of the injuries sustained. There is no allegation whatsoever which would link the Lamkens, as exclusive "snow cone" concessionaires, to the events leading to the filing of the complaint.

Turning to the broader test apparently applied in *Dixon v. Fiat-Roosevelt Motors, Inc., supra*, we reach the same conclusion. Although pretrial discovery and investigation by both the Fair Association and the Lamkens revealed that the Parks slipped on ice on the steps of the grandstand, it was never established that the ice came from a "snow cone."[1] This is not a determinative fact, however, because even if it were conclusively established that the ice came from a "snow cone" we would not be willing to impose upon the Lamkens a duty to defend. To determine the scope of the obligation which the Lamkens did assume, we must examine the terms of the indemnity agreement. ·

■ The Lamkens contracted to

protect and indemnify and hold harmless the association from any and all claims . . . [resulting] either directly or indirectly from the activities and business of the concessionaire in connection with this contract.

The question which must be answered, therefore, is whether the Parks' injuries, assuming they did result from a slip on ice from a "snow cone," resulted either directly or indirectly from the activities and business of the concessionaire. We feel the question must be answered in the

---

[1]Mr. Parks testified that he believed the ice came from a "snow cone." But when asked to describe the cup which was lying on the step near the ice, he replied that it had a flat bottom, indicating a soft-drink cup rather than a cone-shaped "snow cone" cup.

negative. Indemnity agreements are to be viewed realistically as efforts by businessmen to allocate as between them the cost or expense of the risk of accidents. In so interpreting indemnity agreements, causation and not negligence is the touchstone. *Northern Pac. Ry. v. National Cylinder Gas Div. of Chemetron Corp.*, 2 Wn. App. 338, 467 P.2d 884 (1970); *Continental Cas. Co. v. Municipality of Metropolitan Seattle*, 66 Wn.2d 831, 405 P.2d 581 (1965). We are aware that if a simple "but-for" causation test were applied, it could be said that the Parks could not possibly have slipped on ice from a "snow cone" if the Lamkens had not sold the "snow cone." We do not believe, however, that the parties intended the causal link between the injuries and the concessionaire's business to be so attenuated. Though negligence need not be established, we hold that there must be some evidence of control by the indemnitor over the instrumentality or conditions causing the accident in order to impose liability to indemnify or defend. *See Northern Pac. Ry. v. National Cylinder Gas Div. of Chemetron Corp., supra* at 345. Such evidence of control is lacking in the instant case.

At the time the Fair Association tendered defense of the Parks' lawsuit to them, the Lamkens knew that they were exclusive "snow cone" concessionaires on the fairgrounds and that they had no vendors of "snow cones" in the grandstands. Therefore, they could reasonably infer that the "snow cone" must have been transported to the grandstand and spilled on its steps by a patron of the fair. We do not believe the parties intended that the concessionaires be responsible for the actions of each of its customers. If such a result were intended, it should have been spelled out in certain terms on the face of the indemnity provision of the contract. If the language of a contract is subject to interpretation because vague or ambiguous, it will be construed most strongly against the party who drafted it, in this case, the indemnitee. *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 410 P.2d 7 (1966). As the complaint alleged, it was the responsibility of the Fair Association to maintain the

grandstands in a safe condition for use by the fair's patrons. If the Fair Association intended to delegate this responsibility to each individual concessionaire and to hold them liable for the failure to do so, such intent should appear on the face of the contract. We are unwilling to interpret the indemnity provision to produce this unlikely result.

Having concluded that the Lamkens, under either the strict or expanded tests, were under no duty to defend the Parks' lawsuit, our holding must be they cannot be held liable for breaching that duty. Accordingly, the trial court's order requiring the Lamkens to reimburse the Fair Association on its attorney's fees and costs is reversed.

PETRIE, C.J., and PEARSON, J., concur.