**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 15, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AVALON CARE CENTER-FEDERAL
WAY, LLC,

      Plaintiff,

v.

BRIGHTON REHABILITATION,
LLC,

      Defendant Third-Party Plaintiff
Counterclaim Defendant-
Appellee,

v.

AEGIS THERAPIES, INC.,

      Third-Party Defendant
Counterclaimant-Appellant.

Nos. 13-4126 & 14-4012
(D.C. No. 2:10-CV-01038-BSJ)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **KELLY**, and **BACHARACH**, Circuit Judges.

---

[*]     This order and judgment does not constitute binding precedent, except
under the doctrines of law of the case, res judicata, and collateral estoppel.  But,
the order and judgment may be cited for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

This appeal involves indemnity. A physical therapy service (Brighton Rehabilitation, LLC) agreed to help patients at a health-care facility (Avalon Care Center-Federal Way, LLC). The physical therapy service subcontracted its obligations to another company (Aegis Therapies, Inc.). At each step, the party undertaking the responsibility agreed to indemnity: Aegis would indemnify Brighton for Aegis's "acts" and "omissions," and Brighton would indemnify Avalon. Our appeal involves Aegis's indemnification of Brighton.

Aegis's and Brighton's promises of indemnity were triggered when a 96-year-old woman, Ms. Kathleen Miller, suffered injuries while being helped by an Aegis employee. Ms. Miller was injured and sued Avalon. Avalon tendered a defense of the Miller lawsuit to Brighton, which refused and tendered a defense to Aegis, which also refused. Left on its own, Avalon settled with Ms. Miller and sued Brighton for the settlement amount, prejudgment interest, attorneys' fees, and costs. Brighton reacted by suing Aegis based on its promise of indemnity.

The district court granted summary judgment to Brighton on virtually all claims, ordering Aegis to indemnify Brighton for its legal expenses and the amounts Brighton had to pay Avalon. Aegis appeals.

In the appeal, we must address two issues:

- *The triggering term "Act" and reimbursement of Brighton for the settlement.* The indemnity clause required Aegis to indemnify

Brighton from losses and liabilities directly or indirectly caused by Aegis's "act." Brighton incurred liability based on a claim involving Aegis's role in helping Ms. Miller move in her wheelchair. Thus, we must ask: Does helping Ms. Miller in a wheelchair constitute an "act"? We conclude it does. As a result, Aegis must indemnify Brighton for its losses and liabilities resulting directly or indirectly from Aegis's performance under its contract with Brighton. These losses and liabilities included the amount Brighton had to reimburse Avalon for its settlement with Ms. Miller.

- *The triggering term "Omission" and reimbursement of Brighton for prejudgment interest and legal expenses incurred by both Brighton and Avalon.* The indemnity clause covered Brighton's losses and liabilities not only for Aegis's "acts," but also for its "omissions." Aegis failed to defend Brighton, and we must ask: Does Aegis's failure to provide a defense constitute an "omission" under the indemnity clause? We conclude it does. This omission created losses and liabilities for Brighton, requiring it to incur legal expense, to pay prejudgment interest to Avalon, and to pay Avalon for its attorneys' fees and costs. As a result, Brighton is entitled to indemnity for these losses and liabilities.

With our conclusions on these two issues, we affirm the award of summary judgment to Brighton.

## I.    Appellate Jurisdiction

Though the parties do not question jurisdiction, we must always assure ourselves of our jurisdiction. *See United States v. Torres*, 372 F.3d 1159, 1160 (10th Cir. 2004). We have jurisdiction over final orders,[1] but the finality of the district court's order is in question because Brighton states that the court failed to rule on a claim involving attorneys' fees as damages. Brighton is incorrect

---

[1]     28 U.S.C. § 1291.

because the district court has decided this claim. Brighton requested an award of attorneys' fees as the prevailing party, later moving to amend the judgment to seek some of the attorneys' fees as part of the damage award. The district court denied this part of the request and stated that the judgment constituted a final order. Because the district court entered a final order, we have appellate jurisdiction.

## II.    Summary Judgment

With appellate jurisdiction, we review the district court's award of summary judgment to Brighton. We uphold the award of summary judgment, concluding that Aegis's indemnity obligation was triggered by its "act" (in moving Ms. Miller in her wheelchair) and "omission" (in failing to provide a defense to Brighton). Thus, the district court properly concluded that the indemnity clause covered the funds that Brighton had paid its attorneys and Avalon.

### A.    Our Standard of Review

Our review is de novo. *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014). We apply the same standard applicable in district court: Viewing the evidence in the light most favorable to Aegis, we must decide whether there is a genuine issue of material fact. *SEC v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013).

**B.** **The Amount Brighton Reimbursed Avalon for Its Settlement: Aegis's "Act"**

Avalon settled by paying Ms. Miller, but later recouped the payment from Brighton. We conclude that Brighton is entitled to indemnity for this payment to Avalon.

Under the contract, Aegis must indemnify Brighton for "any and all liability, loss, costs, and expenses . . . incurred directly or indirectly from any *acts* . . . of Aegis . . . from any cause arising from or relating to Aegis' performance under [the] Agreement." Appellant's App. at 95 (emphasis added). This clause applies because the claim against Avalon grew out of an "act" that is covered by the contract: helping to move Ms. Miller in a wheelchair. Because her injury (and resulting suit against Avalon) grew out of Aegis's "act," Aegis must indemnify Brighton for the amount that it had to pay Avalon.

The parties agree that we should apply Washington law to interpret the indemnity clause. Under Washington law, we give words their ordinary meaning. *See Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 209 P.3d 863, 871 (Wash. 2009). The operative word in the indemnity clause — "act" — commonly means to "take action" or "do something." *New Oxford American Dictionary* 15 (3d ed. 2010) (primary definition of "act"). Helping someone in a wheelchair constitutes an "act" under any common definition.

Aegis argues that

- the "act" would trigger indemnity only if Aegis was culpable, and

- Aegis did nothing wrong in helping Ms. Miller in her wheelchair.

We disagree with Aegis's gloss on the definition: The term "act" does not require culpability.

Aegis argues that it didn't cause the injury because Ms. Miller caused her own injury. But, the indemnity clause covered losses and liabilities resulting "directly or indirectly" from Aegis's acts. Thus, if Aegis "acted," it had to indemnify Brighton for its indirect losses. If Ms. Miller injured herself, her fault might have been a contributing cause. But, helping Ms. Miller move in her wheelchair would have remained an indirect cause; thus, Brighton would be entitled to indemnity even if Ms. Miller had contributed to the accident.

Under any ordinary usage of the term "act," the indemnity clause would cover what Aegis did in helping to move Ms. Miller in her wheelchair. That effort constitutes an "act," whether culpable or not. *See Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 209 P.3d 863, 871 (Wash. 2009) (holding that a similar indemnity clause, covering all claims involving "services," was not limited to tort actions).

In seeking to overcome the ordinary meaning of the term "act," Aegis points to two other contract provisions and to two Washington cases. These provisions and cases do not justify disregard for the common understanding of the term "act."

-6-

Aegis relies on two other provisions in the contract with Brighton. One provides indemnity from Brighton to Aegis; the other provision addresses indemnity for specific kinds of claims, which involve quality of care and billing errors. In Aegis's view, these provisions reflect an intent to limit indemnity to acts involving culpability. We disagree.

The Brighton-Aegis contract does contain reciprocal promises of indemnity. Appellant's App. at 95. Both provisions state that indemnity is triggered by acts arising from or relating to the indemnitor's contractual performance. *Id.* This language makes sense regardless of whether the indemnitor was culpable: If the loss arose from or related to that party's contractual performance, indemnity is triggered — regardless of whether the contractual performance was culpable.

Aegis also points to examples given in the indemnity clause, providing that Aegis's duty of indemnity would "include[]" losses involving billing errors and violations of quality-of-care standards. *Id.* In Aegis's view, the examples (billing errors and quality-of-care violations) suggest that any other acts could trigger indemnity only if they involved fault. But, these examples are prefaced by the word "including," which is a "term of enlargement." *Brown v. Scott Paper Worldwide Co.*, 20 P.3d 921, 927 (Wash. 2001). If anything, the examples favor Brighton, for the term "including" suggests that the parties intended to require indemnity from Aegis at least in some instances when its acts would not involve

violation of quality-of-care standards. Otherwise, the parties would have used the word "means" instead of "including."

Aegis also refers to two cases: *Nunez v. American Building Maintenance Company West*, 190 P.3d 56 (Wash. Ct. App. 2008), and *Parks v. Western Washington Fair Association*, 553 P.2d 459 (Wash. Ct. App. 1976). Aegis argues that these cases limit indemnity to acts involving fault. We disagree.

Washington cases support the common-sense notion that an indemnity clause requires fault when the clause says it requires fault. That was the case in *Nunez*, where the indemnity clause said that it covered only losses "'caused by negligence, misconduct or other fault'" of the indemnitor. *Nunez*, 190 P.2d at 57. No such limitation appears in our indemnity clause, so *Nunez* is inapplicable.

*Parks* indicates that Washington law may prohibit indemnity in the absence of the indemnitor's "control . . . over the instrumentality or conditions causing the accident." 553 P.2d at 462. There, someone slipped on a snow cone in a grandstand and sued the association that maintained the property. *Id.* at 460. The association then sought indemnity from the company that sold snow cones to people in the grandstand. *Id.* The court disallowed indemnity because the seller of the snow cones lacked any control over the conditions in the grandstand. *Id.* at 460-62.

Our situation is different. Aegis had control over the instrumentality causing the harm, for Aegis was helping Ms. Miller move in her wheelchair.

Aegis cannot avoid indemnity based on a lack of control and does not suggest otherwise.

Neither *Nunez* nor *Parks* bears on our issue. Thus, we must apply the ordinary meaning of the words used in the indemnity clause. Doing so, we conclude that Brighton's loss arose indirectly from Aegis's act (helping Ms. Miller in her wheelchair). That act led indirectly to Brighton's duty to reimburse Avalon for its settlement with Ms. Miller. Thus, Brighton was entitled to recoup this money from Aegis.

**C. Brighton's Other Expenditures: Aegis's "Omission"**

Brighton had to indemnify Avalon not only for what it paid in settlement, but also for Avalon's attorneys' fees and expenses and prejudgment interest on the settlement amount. In addition, Brighton had to incur its own attorneys' fees and expenses. We conclude that Brighton is entitled to recoup all of these expenditures from Aegis because of its "omission" (failure to provide a defense).

**1. Aegis's "Omission"**

The indemnity clause covered not only "acts," but also "omissions." Brighton alleges an "omission" by Aegis when it failed to provide a defense for Avalon.[2] Avalon's various expenditures were the indirect result of that omission.

---

[2] The concurrence points out that the contract also obligates Brighton to indemnify Aegis for its losses incurred from "omissions . . . under this Agreement." Appellant's App. at 95. The phrase "this Agreement" refers to Brighton's agreement with Aegis, not Avalon. Thus, Aegis has never argued

The term "omission" means that "something . . . has been left out or excluded." *New Oxford Am. Dict.* 1223 (3d ed. 2010). Aegis made an "omission" when it declined Brighton's request to assume the defense of Avalon.[3]

## 2. Brighton's Damages from Aegis's Omission

Aegis's omission caused Brighton to suffer damages consisting of prejudgment interest on the settlement amount, payment to Avalon for its attorneys' fees and expenses, and legal fees and expenses for Brighton.

### a. Prejudgment Interest on the Settlement Amount

For example, Brighton had to pay Avalon the prejudgment interest on the funds paid to Ms. Miller. These payments were the indirect result of Aegis's failure to provide a defense when requested by Brighton.

### b. Avalon's Attorneys' Fees and Expenses

Brighton not only had to reimburse Avalon for the funds paid to Ms. Miller and for prejudgment interest, but also had to pay Avalon for its attorneys' fees and

---

(either in the district court or our court) that it can recoup or offset its losses from Brighton as a result of Brighton's "omission" in the Brighton-Avalon agreement.

[3]    The district court reasoned that the legal fees had resulted directly or indirectly from Aegis's "acts, errors or omissions." Appellant's App., vol. III at 536-37. This rationale led Aegis to argue that Brighton's refusal to defend Avalon constituted an intervening act severing the "causative link" between Aegis's alleged wrongdoing and Brighton's damages. Appellant's Opening Br. at 25. This argument could conceivably apply to Aegis's "act" (pushing Ms. Miller in her wheelchair), but not its "omission" (refusing Brighton's request to assume Avalon's defense). Aegis's omission came after Brighton had declined to defend Avalon.

expenses. Avalon would not have had to pay for attorneys' fees and expenses if Aegis had agreed to provide Brighton with a defense. Thus, Brighton's duty to reimburse Avalon for its attorneys' fees and expenses constituted losses or liabilities resulting indirectly from Aegis's failure to provide a defense.

### c. Brighton's Own Attorneys' Fees and Expenses

Brighton incurred expenses not only to reimburse Avalon, but also to pay Brighton's own attorneys' fees and costs. Brighton would not have had to incur these fees and costs if Aegis had provided a defense. Aegis's failure to defend Brighton, an "omission" under the indemnity clause, triggered the duty to indemnify Brighton for its indirect losses. These losses included Brighton's own attorneys' fees and costs. Thus, Brighton is entitled to recoup these fees and costs from Aegis under the indemnity clause.

Avalon's Settlement with Ms. Miller

12.2    Aegis Indemnification.    Aegis shall save, indemnify and hold Brighton and its Affiliates harmless of and from any and all liability, loss, costs and expenses (including reasonable attorneys' fees) (collectively, "Losses) incurred directly or indirectly from any acts, errors or omissions of Aegis, its agents, employees or invitees from any cause arising from or relating to Aegis' performance under this Agreement, including losses sustained by Brighton as a result of errors in billing information by Aegis to Brighton, quality of care violations attributable to the omissions of Aegis in the provision and delivery of services and errors by Aegis in determining Medicare coverage for the services provided under this Agreement.

•Prejudgment interest on the settlement funds
•Avalon's attorney fees and costs
•Brighton's attorney fees and costs

### 3.    Pre-Tender Attorneys' Fees and Costs

Brighton incurred some of its attorneys' fees and costs before tendering a defense to Aegis.  As noted above, Aegis argues that it should not have to pay Brighton for any of its attorneys' fees or expenses.  In the alternative, Aegis denies that it owes Brighton for the money it had spent in legal expenses before asking Aegis for a defense.  We reject Aegis's alternative argument.

Resolution of the issue involves interpretation of the indemnity clause.  As discussed above, the parties agree that interpretation of the indemnity clause is governed by Washington law.  In Washington, Aegis would incur liability for Brighton's pre-tender attorneys' fees and costs unless Aegis "show[ed] substantial and actual prejudice" from the delay in tendering the defense.  *Nat'l Sur. Corp. v. Immunex Corp.*, 256 P.3d 439, 448 (Wash. App. Ct. 2011).  Aegis must prove that the late tender "had an identifiable and material detrimental effect on its ability to defend its interests."  *Id.* at 448.

Aegis objects to the district court's resolution of this issue on summary judgment, urging the presence of fact-questions that should be reserved for a jury.  But, Aegis presented no evidence of an identifiable, material detriment on its ability to defend.

In Aegis's view, the expense would have been less if Brighton had tendered the defense earlier.  With an earlier tender, Aegis states that it could have obtained

-12-

cheaper counsel and pursued better strategies. But, in its opening brief, Aegis did not refer to any evidence for these assertions.

Aegis again failed to identify any evidence in its reply brief. There, for the first time, Aegis stated that Brighton might have been able to save litigation expenses by filing a summary judgment motion against Ms. Miller. But even then, the argument was not supported by any evidence. Aegis failed to even say what Brighton could have argued in a summary judgment motion.

The absence of any evidence is fatal. Aegis's assertion of prejudice rests on surmise, and we cannot infer an identifiable, material detriment on Aegis's ability to defend its interests.

### 4. Mitigation of Damages

Aegis makes two mitigation arguments:

- Brighton should have tendered a defense to Avalon earlier, and

- Brighton incurred unnecessary legal expenses by retaining counsel to protect its interests.

We reject both arguments.

### a. Brighton's Failure to Defend Avalon

Aegis's first argument is that Brighton should have tendered a defense to Avalon. Invoking the doctrine of avoidable consequences, Aegis argues that it cannot incur liability resulting from Brighton's breach of its contract with Avalon.

This argument cannot be reconciled with the language in the indemnity clause or Washington law on mitigation of damages.

Under Washington law, Brighton would ordinarily be unable to recover damages that could have been reasonably avoided. *See Ainsworth v. Progressive Cas. Ins. Co.*, 322 P.3d 6, 18 (Wash. App. 2014). In Aegis's view, Brighton could have minimized its damages by tendering a defense to Avalon. This argument ignores Paragraph 12.4 and Aegis's own opportunity to mitigate the damages.

Paragraph 12.4 states that Brighton's failure to defend Avalon would not excuse Aegis's duty to indemnify Brighton: "[I]n the event [Aegis] does not elect to assume the defense of any claim, then any failure of [Brighton] to defend . . . any claim . . . shall not relieve [Aegis] of its obligations hereunder." Appellant's App. at 96. Through this language, the parties agreed that Aegis would continue to incur a duty to indemnify Brighton even if Brighton breached its own duty to defend Avalon. In this manner, Aegis and Brighton expressly modified the common law duty to mitigate damages.

Aegis argues that Paragraph 12.4 simply preserved existing indemnity obligations, pointing out that the paragraph refers to continuation of Aegis's "obligations hereunder." The term "hereunder" means "as provided for under the terms of this document." *New Oxford Am. Dict.* 813 (3d ed. 2010). Brighton's suit against Aegis is based on Paragraph 12.2 in the same contract. Thus,

Paragraph 12.4 unambiguously preserves Brighton's right to obtain damages in the event of a failure by either Brighton or Aegis to defend Avalon.

Aegis argues that this interpretation would "put the contract in contradiction to Washington's firmly settled doctrine of avoidable consequences." Appellant's Opening Br. at 23. In Aegis's view, this contradiction forces us to accept its interpretation of Paragraph 12.4 because "there is no language in the contract indicating the parties intended an abrogation of the doctrine of avoidable consequences." *Id.* at 25.

We believe Aegis's argument is self-defeating. The parties' intentions are reflected most clearly through the language in the contract. *See Washington v. R.J. Reynolds Tobacco Co.*, 211 P.3d 448, 451-52 (Wash. App. 2009). As Aegis states, Paragraph 12.4 conflicts with the common law duty to mitigate damages. In this manner, the parties unambiguously showed their intent: When they agreed to Paragraph 12.4, they showed their intent to modify the common-law duty to mitigate damages. *See Seabed Harvesting, Inc. v. Dep't of Nat. Res.*, 60 P.3d 658, 662 (Wash. App. 2002).

Even without this qualification of the common law duty of mitigation, Aegis cannot reduce the damage award based on Brighton's breach of its contract with Avalon. In Washington, "a plaintiff has no 'duty' to mitigate when the defendant has equal opportunity to do so." *Walker v. Transamerica Title Ins. Co.*, 828 P.2d 621, 625 (Wash. App. 1992). When Brighton tendered a defense to Aegis, the two

had equal opportunity to step in and defend Avalon.  In these circumstances, Aegis cannot invoke the mitigation doctrine to reduce Brighton's award of damages.

### b.    Brighton's Hiring of Counsel

Aegis also argues that Brighton acted unreasonably by retaining counsel to protect its interests in the Avalon-Miller litigation.  For this argument, we consider the reasonableness of Brighton's conduct.  *Cobb v. Snohomish Cnty.*, 935 P.2d 1384 (Wash. Ct. App. 1997).

Brighton did not act unreasonably in obtaining counsel.  Brighton was sued by Avalon, forced to defend itself because Aegis failed to step in.  No fact-finder could regard Brighton as unreasonable when it tried to protect its interests by hiring counsel.  Brighton needed legal assistance only because Aegis had failed to provide a defense.

### c.    Summary

We conclude that Aegis cannot avoid its indemnity obligations based on a failure to mitigate damages.

## III.    Attorneys' Fees to Brighton as the Prevailing Party in District Court

The district court awarded attorneys' fees to Brighton as the prevailing party.  In our appeal, Aegis asks not only for reversal, but also for vacatur of the fee award if we reverse.  But, we are affirming, not reversing.  As a result, Brighton remains the prevailing party in district court and we have no reason to disturb the prior fee award.  As a result, we uphold that award.

-16-

## IV. Conclusion

We conclude that we have jurisdiction, that the district court properly awarded summary judgment to Brighton, and that the district court properly awarded attorneys' fees to Brighton as the prevailing party. As a result, we affirm.

Entered for the Court


Robert E. Bacharach
Circuit Judge

Nos. 13-4126 & 14-4012, <u>Avalon v. Brighton</u>

**BRISCOE**, Chief Judge, concurring.

I write only to address Aegis's claim that it should not be responsible for paying prejudgment interest on the settlement amount or for paying Avalon's attorneys' fees and expenses. I agree with the majority's conclusion that Aegis is liable for these costs, but would not rely on the term "omission" in Section 12.2 to reach that result. The difficulty with relying on the term "omission" to impose liability on Aegis is that Section 12.3, which describes Brighton's indemnification responsibilities under the contract, uses the same language, requiring Brighton to indemnify Aegis from any "acts, errors or *omissions*" of its own. Thus, if we read Aegis's failure to defend as an omission under Section 12.2, as the majority does, then we must also read Brighton's failure to defend as an omission under Section 12.3. Read in this way, these sections suggest that Aegis may not in fact be responsible for the costs that resulted from Brighton's "omission" (i.e., its failure to defend Avalon), which would include, *inter alia*, Avalon's attorneys' fees and expenses.[1]

Instead, I would read Section 12.2's language requiring Aegis to indemnify Brighton from "any and all . . . [l]osses . . . incurred directly or *indirectly* from any

---

[1] As pointed out by the majority, Aegis has not argued that it can recoup its losses because of Brighton's "omission" (failure to defend) under the Brighton-Avalon agreement. I raise this point only to highlight the problem with relying on Aegis's "omission" (failure to defend) when requiring Aegis to indemnify Brighton for what it paid out in attorneys' fees, expenses and prejudgment interest. Both Brighton and Aegis failed to defend when called upon to do so. Consequently, both parties are guilty of "omissions" under the terms of the Brighton-Aegis indemnity agreement.

acts . . . of Aegis" as being broad enough in scope to cover both the prejudgment interest and Avalon's attorneys' fees and expenses. In other words, in my opinion, these costs, which Avalon incurred when it was forced to defend against the lawsuit because Aegis and Brighton refused to do so, are close enough in relation to the Miller lawsuit to fall within the scope of a loss resulting indirectly from Aegis's act of pushing Ms. Miller in the wheelchair.