**FILED**
**NOVEMBER 23, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROBERTO CASTRO, Personal Representative of the Estate of EVELYN L. STENNES, | ) ) ) ) | No. 37995-7-III |
| Respondent, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| ALEX THOMASON, individually, and ALEXANDER HARRIS THOMASON and KATY ANNE THOMASON, a marital community; and ALEX GROUP LLC, | ) ) ) ) ) ) ) | |
| Appellants. | ) ) | |

FEARING, J. — This appeal asks the narrow question of whether the superior court correctly granted a motion to dismiss a third-party complaint. The third-party complaint seeks contract indemnification for claims brought against the third-party plaintiff, attorney Alex Thomason, in this suit. Based on a liberal reading of the pleadings, we reverse in part and affirm in part the order of dismissal. We do not resolve any of the substantive issues presented by the complaint or third-party complaint.

FACTS

This lawsuit arises out of an attorney Alex Thomason's business transactions with his elderly client, Bert Stennes, now deceased. Bert's wife Evelyn preceded him in death. The party suing attorney Thomason is the decedent's estate of Evelyn Stennes. Thomason brings his third-party complaint against Bert Stennes' estate. Because we address the trial court's grant of a motion to dismiss a third-party complaint, we draw the facts from Evelyn Stennes' estate's complaint and Alex Thomason's third-party complaint.

Evelyn Stennes died in 2009, thereby ending over fifty years of marriage with Bert. At the time of Evelyn's death, Bert and Evelyn held assets worth $3.5 million. Evelyn's will directed her personal representative to create an exemption equivalent trust or a marital trust and place her half of the marital community assets into the trust. Bert served as personal representative for Evelyn's estate from 2009 until his death in August 2017.

Bert Stennes failed to divide the couple's property into one-half for Evelyn Stennes' trust and one-half for him. Bert also failed to fund any trust as directed by Evelyn's will. On April 18, 2013, Bert opened an investment account under the name of Evelyn Stennes' estate. He deposited $775,528.85 in liquid assets, including $161,950.63 in cash, into the account.

In 2012, Alex Thomason and Bert Stennes met, when the former was age 37 and Bert was age 88. Thomason is a Washington State licensed attorney. Thomason then proceeded on the perilous path of conducting business with his client, Bert Stennes.

On April 24, 2013, Bert Stennes withdrew $160,000 from the investment account maintained by the estate of Evelyn Stennes. Bert then loaned $400,000 to attorney Alex Thomason, so Thomason could purchase property adjacent to Bert's land. Thomason signed a note to evidence the loan. The loan was interest free for seven years. In turn, Thomason leased some of the purchased property to Bert for development into an orchard. During this time, Thomason performed legal services for Bert Stennes.

Three years later and on November 16, 2016, Bert Stennes and Alex Thomason signed an "agreement cancelling note and terminating joint operating agreement." *See* Clerk's Papers (CP) at 235-44. The agreement canceled the remaining balance of $186,672 on the 2013 $400,000 loan:

> 3. <u>Elimination of Remaining Debt.</u> The remaining principal amount of $186,672 payable by ALEX to BERT under the 2013 Note, together with any and all obligation to pay interest thereunder, is hereby terminated, released, and forever discharged.

CP at 236 (boldface omitted). The 2016 agreement also included the following "indemnification and hold harmless" clause:

> 7. <u>Indemnification and Hold Harmless.</u> BERT and ALEX agree to indemnify and hold each other harmless against any and all claims, demands, suits, actions, expenses, accountants' fees, attorneys' fees, expert witness fees, and all losses and damages of every kind and nature, arising

out of or in connection with the termination of the 2013 Note, 2014 Lease,
2015 Amendment and this Agreement.

CP at 236 (boldface omitted). At the time of the signing of this loan forgiveness

agreement, Thomason served as Bert Stennes' legal counsel. Bert Stennes was then 93

years of age.

Also on November 16, 2016, Bert Stennes amended his last will and testament.

The amended will included the following provision:

### ARTICLE VII. TERMINATION OF BUSINESS TRANSACTIONS WITH ALEX THOMASON

By gift, or by cancellation of indebtedness, or by any other means
necessary, I intend to terminate prior to my death my business transactions
with my attorney, friend and neighbor, ALEX THOMASON. My business
transactions with ALEX THOMASON are currently summarized by that
certain Agreement to Amend Promissory Note and Joint Operating
Agreement entered into by and between me and ALEX THOMASON on
May 8, 2015 (the "Agreement"). The Agreement references required
payments to me from ALEX THOMASON that are scheduled to expire 30
months after May 8, 2015. It is my intent to cancel and forgive said
payments at the time of execution of this my Last Will and Testament.
Some of these business transactions may nonetheless be in existence at the
time of my death. If at the time of my death I am engaged in any oral or
written leases, contractual or business relationships (herein collectively
referred to as "Business Transactions") with ALEX THOMASON, I hereby
give, devise, bequeath and release any and all of my interest and the interest
of my estate in said Business Transactions to ALEX THOMASON. It is
my intent that my interest and the interest of my estate in said Business
Transactions includes, but is not limited to, any property conveyed by
exercise of my power of appointment as provided in Article VI above. In
furtherance thereof, I direct my Personal Representative and Trustee to
execute any written agreements necessary to terminate and release said
Business Transactions and any claims of my estate related thereto without
any cost to or charge against ALEX THOMASON. In the event one or

4

more of my children, the spouses of my children, my grandchildren, the spouses of my grandchildren, any other more remote descendants of mine or their spouses, any of the beneficiaries of my estate, and any of the beneficiaries of the Stennes Family Trust established under Article XII herein files a lawsuit or other complaint against ALEX THOMASON related to said Business Transactions, I direct my Personal Representative and Trustee to indemnify and defend ALEX THOMASON from any such claim. I hereby direct that the costs of such indemnification and defense shall be charged against and paid from the share of the Stennes Family Trust allocated to such beneficiary who files, or whose spouse files, such lawsuit or complaint.

CP at 92-93.

Bert Stennes died in August 2017. On August 13, 2018, the superior court substituted Roberto Castro as the personal representative of Evelyn Stennes' estate. The court appointed Stephanie Taylor as the personal representative of Bert Stennes' estate.

PROCEDURE

Roberto Castro, as the personal representative of Evelyn Stennes' estate, filed this suit against Alex Thomason, the marital community of Alex and Katy Thomason, and Alex Group, LLC. Castro alleges that Bert Stennes advanced the loan to Thomason on the same day that Bert wrongfully withdrew $160,000 from Evelyn's estate investment account. The money loaned to Thomason included the money from the investment account and other money attributable to the estate of Evelyn Stennes. The loan did not contain reasonable terms. Impliedly, Thomason breached his fiduciary duties to Bert Stennes, if not the estate of Evelyn Stennes.

5

Roberto Castro, on behalf of Evelyn Stennes' estate, further alleges that Bert Stennes lacked authority to loan estate money to Alex Thomason under unreasonable terms and also lacked power as the personal representative of the estate to later forgive part of the loan. Castro alleges that Bert Stennes transferred other assets of Evelyn's estate to Alex Thomason without sufficient or any consideration. Castro advances theories of equitable lien, unjust enrichment, and a constructive trust against Thomason. Castro also seeks an accounting of all funds garnered by Alex Thomason from his former client, Bert Stennes.

Alex Thomason filed a third-party complaint against Stephanie Taylor in her capacity as personal representative of Bert Stennes' estate. Thomason claims Taylor must defend and indemnify him pursuant to the November 16, 2016 agreement terminating note and Bert's last will and testament.

Stephanie Taylor, as the personal representative of Bert Stennes' estate, brought a CR 12(b)(6) motion to dismiss Alex Thomason's third-party complaint. In support of and in opposition to the motion, both parties filed declarations despite a motion to dismiss being based only on the allegations in the initial pleadings. No party asked the superior court and no party has asked this reviewing court to treat the motion as a summary judgment motion. The superior court granted Bert Stennes' estate motion and dismissed the third-party complaint.

6

LAW AND ANALYSIS

Third-Party Complaint's Request for Indemnification

In his third-party complaint, Alex Thomason argues that the indemnification and hold harmless clause in the November 16, 2016 agreement canceling note imposes a duty on Bert Stennes' estate to indemnify and defend Thomason in the action against him by Evelyn Stennes' estate. This court reviews a CR 12(b)(6) dismissal de novo. *FutureSelect Portfolio Management, Inc. v. Tremont Group Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). All facts alleged in the complaint are taken as true, and this court may consider hypothetical facts. *FutureSelect Portfolio Management, Inc. v. Tremont Group Holdings, Inc.*, 180 Wn.2d at 962. A complaint survives a CR 12(b)(6) motion if any set of facts could exist that would justify recovery. *FutureSelect Portfolio Management, Inc. v. Tremont Group Holdings, Inc.*, 180 Wn.2d at 963.

The parties dispute whether the November 2016 agreement canceling note violated RPC 1.8. RPC 1.8 prohibits an attorney from entering into a business transaction with a client or knowingly acquiring an ownership, possessory, security, or other pecuniary interest adverse to a client unless the attorney and client follow the strictures of RPC 1.8. At the motion to dismiss stage, we draw all inferences in favor of the nonmoving party, Alex Thomason. For purposes of review, we assume that the agreement canceling note survives a RPC 1.8 challenge. The superior court also proceeded on this assumption.

Indemnity means reimbursement. *Central Washington Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 513, 946 P.2d 760 (1997). A duty to indemnify generally arises when the plaintiff in the underlying action prevails on facts that fall within its coverage. *Nunez v. American Building Maintenance Co. West*, 144 Wn. App. 345, 351, 190 P.3d 56 (2008).

The language in the November 16, 2016 agreement imposes a broad obligation of indemnification for claims asserted against Alex Thomason by the estate of Evelyn Stennes. The agreement requires Bert Stennes to indemnify Alex Thomason from any claim "arising out of or in connection with" the termination of the 2013 Note, 2014 Lease, 2015 Amendment and this Agreement. CP at 328. Thus, the indemnification clause does not limit the obligation to suits only directly related to the November 16, 2016 agreement as long as the other transaction has a connection with the cancellation agreement.

Roberto Castro's underlying complaint against Alex Thomason relies on a theory that Thomason was unjustly enriched by Bert Stennes' wrongful transfer of $160,000 from Evelyn Stennes' estate through the 2013 Note subsequently canceled in the November 2016 agreement canceling note. Although Bert's withdrawal of the $160,000 from the investment account initiated the harm against Evelyn's estate, Thomason's enrichment particularly arose from the November 2016 agreement that contained the indemnification provision. But for the November 2016 agreement, the harm from the

2013 loan would have been reduced and Bert Stennes' breach of a fiduciary duty to the estate of Evelyn Stennes would have been significantly softened.

After drawing all inferences in favor of Alex Thomason, we conclude Thomason's third-party complaint for indemnification survives a motion to dismiss. Thomason also relies on the will of Bert Stennes to create a duty to indemnify from any liability imposed in Roberto Castro's suit against him. Because we rule that the November 16, 2016 agreement arguably imposes a duty to indemnify, we need not address this additional contention for purposes of the motion to dismiss.

Third-Party Complaint's Request for a Defense

Stephanie Taylor, as the personal representative of the estate of Bert Stennes, distinguishes between the duty to indemnify and the duty to defend a lawsuit. Taylor argues that Alex Thomason waived any argument regarding a duty to defend because he did not raise the contention before the trial court.

Alex Thomason's third-party complaint states: "Pursuant to the B. Stennes Will and the Termination Agreement, Ms. Taylor in her capacity as Personal Representative of the Estate of B. Stennes has a *duty to defend*, indemnify and hold Alex Thomason harmless from the claims associated with the Lawsuit." CP at 45 (emphasis added). We may consider, for the first time on appeal, authorities not addressed before a trial court but pertinent to the substantive issues raised before the trial court. *Bennett v. Hardy*, 113

9

Wn.2d 912, 918, 784 P.2d 1258 (1990).  Thomason did not waive his arguments

regarding a duty to defend.

An indemnitor's duty to defend a lawsuit against its indemnitee is independent

from the obligation to indemnify in the event judgment is rendered.  *Parks v. Western*

*Washington Fair Association*, 15 Wn. App. 852, 855, 553 P.2d 459 (1976).  The duty to

defend arises if the indemnification clause imposes the obligation to defend.  *George*

*Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 471 n.1,

836 P.2d 851 (1992).

The language in the November 16, 2016 agreement canceling note imposes a duty

to indemnify, but no duty to defend.  Indemnity only requires reimbursement after the

success of a claim against the indemnitee.

Alex Thomason also relies on Bert Stennes' will when seeking to enforce a duty to

defend on behalf of Bert Stennes' estate.  The indemnification language in the will

includes a duty to defend.  Nevertheless, the language extends only to business

transactions with Alex Thomason pending at the time of Bert's death.  The lawsuit

brought by the estate of Evelyn Stennes does not complain about any business between

Bert Stennes and Thomason pending at Bert's death.  The indemnification language also

extends only to claims brought by descendants of Bert Stennes, beneficiaries of Bert's

estate, and beneficiaries of the Stennes Family Trust.  Bert never created this trust.  The

estate of Evelyn Stennes is neither a beneficiary of any trust or of Bert's estate.

Attorney Fees

Alex Thomason requests attorney fees for his appeal under the indemnification

provisions in the November 16, 2016 agreement canceling note and Bert Stennes' last

will and testament. RAP 18.1 governs a party's request for attorney fees on appeal:

> If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.

Because we reverse the trial court's dismissal of the indemnification claim under

the 2016 agreement canceling note, Alex Thomason may ultimately be entitled to

attorney fees for this appeal. But the trial court must still decide whether to enforce the

indemnification provision given the parties' arguments over the validity of the contract

provisions under RPC 1.8. Thus, we decline an award of fees, subject to a later award of

fees, by the trial court, to the prevailing party, including fees incurred on appeal.

CONCLUSION

We affirm in part and reverse in part the order granting CR 12(b)(6) dismissal of

Alex Thomason's third-party complaint. We reverse the portion of the order dismissing

Thomason's claim for indemnification. We affirm that section of the order dismissing

Thomason's request for a defense. We decline to award Thomason attorney's fees on

appeal.

We remand to the superior court for further proceedings consistent with our ruling. Our ruling does not preclude a filing and entertaining of a summary judgment motion on remand to the superior court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.